**STUDENT COALITION FOR PEACE**

v.

**LOWER MERION SCHOOL DISTRICT, et al.**

Civ. A. No. 84–1017.

United States District Court, E.D. Pennsylvania.

Sept. 28, 1984.

---

Stephen F. Gold, Philadelphia, Pa., for plaintiff.

Thomas Masterson, Philadelphia, Pa., for defendants.

MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

Presently before this court is plaintiff Student Coalition for Peace's (SCP) request for a permanent injunction. Plaintiff seeks to permanently enjoin the defendants, Lower Merion School District and Board of School Directors from prohibiting plaintiff from using various school facilities for the express purpose of conducting a public anti-nuclear/peace exposition.

The facts of this case are rather clear and uncontested. SCP is a group of students enrolled in Lower Merion High School (LMHS). SCP is active in the school by holding meetings in school classrooms and handing out leaflets, as well as other means of expressing itself within the school.

LMHS, a public school, has certain school sponsored organizations, e.g., athletics, dramatics, etc, which are funded and/or supervised by school officials. Conversely, the school has other nonsponsored organizations which are organized by students, but which receive no funds or supervision from the school. SCP receives no funds nor is it given supervision from the school although it does have a faculty advisor. Therefore, SCP falls into the "non-sponsored" organization category. There has been no evidence brought forth by the parties in this action which shows that SCP's "in school" activities have been hindered in any way.

In December of 1983, SCP requested permission from the LMHS's principal to use Arnold Field for a peace exposition.[1] This exposition was to include various outside speakers who were expected to discuss the various political position on disarmament.[2]

1. Permission to use school facilities is required when the activity is not school sponsored and the activity is not during school hours.

2. On April 30, 1983, SCP held a Peace Fair rally at a private school approximately five miles from LMHS, because they had been denied permission to use Arnold Field. This affair was held in an orderly fashion and was attended by approximately 500 people (both students and outsiders). The various topics presented pertained to unilateral disarmament, other approaches to disarmament, and criticism of the President of the United States handling of for-

The public at large would be encouraged to attend and participate. The request was denied. Subsequently, SCP appealed the denial of the use of Arnold Field to the school superintendent, and requested in the alternative the use of Pennypacker Field or the LMHS's Boys' Gym. The appeal and alternate forums were denied. SCP, appearing at the School Board of Directors' Meeting on February 13, 1984, appealed the denial of the use of any of the three sites. SCP additionally requested a fourth alternative, the School Courtyard surrounding the flagpole. Subsequently, on February 27, 1984, this last appeal and alternative were denied by the School Board. However, in the spirit of compromise the School Board offered the use of LMHS's Auditorium. SCP rejected the counter proposal because it believed that it would not permit the required interaction of the people attending the exposition.

The event required several weeks of planning and publicity and had been scheduled for Saturday, April 28th. Since time was critical, SCP sought a preliminary injunction enjoining the School District from denying it use of one of the forums. SCP asserts that its first amendment right of free speech applicable to the states through the fourteenth amendment had been curtailed as a result of the School Board's denial. A hearing was held on March 20–22, 1984. In this Court's overabundance of caution it granted a preliminary injunction[3] on March 22, 1984, enjoining defendants from denying plaintiff's request to use one of the desired locations for its exposition. The defendants permitted the event to take place at the LMHS Boys' Gym. The event was attended by approximately 100 people. The speakers' topics ranged from nuclear disarmament to criticism of the present foreign policy of the United States Government.

■ Except for the Boys' Gym, which is an indoor facility, the other locations which are out of doors cannot be effectively and reasonably kept under lock and key. Hence, plaintiff's argument that because on occasion the public uses the parcels in question for unorganized/leisure activities, the defendants have surrendered their right to exclude organized activities, must fail. The plaintiff argues that the School District has permitted two of the facilities in question (Boys' Gym; Arnold Field) to be used on a case-by-case basis for an extremely limited purposes. Therefore they argue, it must follow that any activity must be permitted.

The United States Supreme Court in *Perry Ed. Assn. v. Perry Local Education Assn.*, 460 U.S. 37, 44, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983) stated: "[N]owhere [have we] suggested that students, teachers, or anyone else has an absolute constitutional right to use all parts of a school building or its immediate environs for ... unlimited expressive purpose. [citing] *Grayned v. City of Rockford*, 408 U.S. 104, 117–118, 92 S.Ct. 2294, 2304, 33 L.Ed.2d 222 (1972)." *Cf. Greer, et al. v. Spock, et al.*, 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976) (no right to make political speeches at military base). *International Society for Krishna Consciousness, Inc. v. N.J. Sports & Exposition Authority*, 691 F.2d 155 (3d Cir.1982) (Religious group prohibited from soliciting funds outside publicly owned race track). *Seyfried v. Walton*, 668 F.2d 214 (3d Cir.1981) (no right for students to produce musical play of their choice). The differences between the parties center on how the property is classified for first amendment purposes. The United States Supreme Court has held a number of times that: "[t]he State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated", [citing] *Adderley v. Florida*, 385 U.S. 39, 48, 87 S.Ct. 242, 247, 17 L.Ed.2d 149 (1966); *Greer, et al. v. Spock, et al.*, 424 U.S. 828, 836, 96 S.Ct. 1211, 1216, 47 L.Ed.2d 505

---

eign affairs. *See* Transcript March 20, 1984, 48–49 (Thurschwell).

3. See *Student Coalition for Peace v. Lower Merion School District, et al.*, No. 84–1017 (E.D.Pa., March 22, 1984) (Bench Opinion granting preliminary injunction).

(1976); *United States Postal Service v. Council of Greenburgh Civil Assoc.,* 453 U.S. 114, 129, 101 S.Ct. 2676, 2685, 69 L.Ed.2d 517 (1981).

■ In *Perry, supra,* the United States Supreme Court catagorized public property depending upon how the government permitted its use in the past. Indeed, the manner in which the property is catagorized determines the restraints permitted on speech.

In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the State to limit expressive activity are sharply circumscribed. At one end of the spectrum are streets and parks which 'have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.' *Hague v. C.I.O.,* 307 U.S. 496, 515 [59 S.Ct. 954, 964, 83 L.Ed. 1423] (1939). In these quintessential public forums, the government may not prohibit all communicative activity. For the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. *Carey v. Brown,* 447 U.S. 455, 461 [100 S.Ct. 2286, 2290, 65 L.Ed.2d 263] (1980)....

A second category consists of public property which the State has opened for use by the public as a place for expressive activity. The Constitution forbids a State to enforce certain exclusions from a forum generally open to the public even if it was not required to create the forum in the first place. *Widmar v. Vincent,* 454 U.S. 263 [102 S.Ct. 269, 70 L.Ed.2d 440] (1981) (university meeting facilities); *City of Madison Joint School District v. Wisconsin Public Employment Relations Comm'm,* 429 U.S. 167 [97 S.Ct. 421, 50 L.Ed.2d 376] (1976)

(school board meeting); *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546 [95 S.Ct. 1239, 43 L.Ed.2d 448] (1975) (municipal theater).[7] Although a State is not required to indefinitely retain the open character of the facility, as long as it does so it is bound by the same standards as apply in a traditional public forum. Reasonable time, place, and manner regulations are permissible, and a content-based prohibition must be narrowly drawn to effectuate a compelling state interest. *Widmar v. Vincent,* supra [454 U.S.] at 269–270 [102 S.Ct. at 274].

[Third Category]

Public property which is not by tradition or designation a forum for public communication is governed by different standards. We have recognized that the 'First Amendment does not guarantee access to property simply because it is owned or controlled by the government.' *United States Postal Service v. Council of Greenburgh Civil Assns., supra* [453 U.S.] at 129 [101 S.Ct. at 2685]. In addition to time, place, and manner regulations, the State may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view.

---

[7] A public forum may be created for a limited purpose such as use by certain groups, e.g., *Widmar v. Vincent* (student groups), or for the discussion of certain subjects, *e.g., City of Madison Joint School District v. Wisconsin Public Employment Relations Comm'n* (school board business).

*Perry Ed. Assn. v. Perry Local Educators' Assn,* 460 U.S. at 45–46, 103 S.Ct. at 954–955.

Consistent with *Perry,* it is paramount that the various uses and activities performed in the past at the location requested be fully understood.[4] Therefore, the Court's analysis must lead to scrutinizing the facts as applied to the locations individ-

---

**4.** Per the LMHS's regulation on community use of school facilities, permission to use school facilities is required where the activity is not school sponsored and the activity is not during school hours.

ually. The plaintiff sought the use of the following locations:

1. *LMHS's courtyard which surrounds the flagpole*—The use of this courtyard has never been requested by any other organization, nor has any organized activity been held there. The courtyard is unguarded and unenclosed. At the hearing plaintiffs admitted they produced no evidence that this facility was ever used by any nonsponsored school activity.

2. *Arnold Field*—It is used by the school in the capacity of providing an area for organized and supervised athletic activities. In a few instances the school has permitted certain limited community activities to be held at the field. Special permission was granted to the Main Line Jaycees to hold a Special Olympics. The Special Olympics are a series of track and field events for handicapped children. Some LMHS students participated in various capacities. No solicitation of funds or distribution of literature occurs at the Olympics. Annually, Memorial Day ceremonies are permitted at the field. Indeed, it is an activity which memorializes those who have given their lives in war time. A "Bike Hike" for mentally handicapped citizens in which participants get sponsors who then donate sums of money to the Montgomery County Associates for Retarded Citizens depending on the mileage and American Cancer Society's "Jog-A-Thon" have been permitted to take place at the field. The "Jog-A-Thon", which is similar to the "Bike Hike" helps raise funds for the American Cancer Society. However, permission has not been freely granted. SCP's request of one year ago was denied. A parochial school's request to use the field for its school activities has been rejected, and a request to use the field for a day camp similarly has been rejected among others. *See* Transcript March 22, 1984, 174–75 (Pugh).

3. *Pennypacker Field*—It has not been used for any non-school sponsored activity. Indeed at the hearing for a permanent injunction, plaintiff admitted there was no evidence showing its use for non-school sponsored activities.

4. *LMHS's Boys Gym* [5]—A Volleyball Marathon has been held annually since 1969. The marathon is organized by students; the general public is invited. Each year the organizers have sought permission from the School District. The marathon is a charitable event in which participants solicit pledges from the community for each hour of volleyball played. Proceeds are donated to various national/international organizations which feed hungry children throughout the world. No solicitation of funds or distribution of literature occurs at the marathon.

The parties do not dispute that the parcels in question do not fall within the first category (traditional forums) of public property, that is, public property which is generally characterized by public streets, parks and sidewalks. *See* Plaintiff's Memorandum of Law in support of a permanent injunction at 4–6.

Therefore, the issues that this Court must address are: whether or not the defendants have created a limited public forum at each of the locations. If a limited forum is found then the proper test is whether the proposed activity falls within the area protected; and if so, whether the state has a compelling interest, closely tailored to effectuate its purpose to overcome plaintiff's first amendment right to free speech. If a limited public forum is not found (therefore, it is a non-public forum) or if the activity falls outside a limited forum's parameter, the issue is merely whether the restrictions by the School Board have a rational basis and are not the product of censoring because of plaintiff's views. *Perry, supra. See Members of the City Council of Los Angeles v. Taxpayers*

---

**5.** A Valentine Day's dance was held for students at the Gym. However, it is fully a school sponsored activity and thus falls within the discretion of the School Board as a curriculum decision. *Accord Seyfried v. Walton*, 668 F.2d 214 (3d Cir.1981) (School District has power to allocate its resources).

*for Vincent,* —— U.S. ——, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984).

■ We must first review the activities at each location to determine whether it is a limited public forum or non-public forum because such determination rests primarily upon the facts. For the purpose of clarity the Court will first categorize Pennypacker Field and the LMHS's Courtyard. Neither of these locations have ever been used for any organized activity. Certainly plaintiff's argument that there is limited access must fail on these clear facts. The fact that individuals have visited these locations from time to time, for their recreation, does not mean that the defendants have surrendered their control over the property, nor does it mean that the grounds become a public or limited public forum. *Greer,* 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505; *Perry,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794.

The Supreme Court has held that the restraints on speech in non-public forums is more relaxed than in public forums. The standard is not a compelling state interest, which the state must show to effectuate a prior restraint. Rather the standard to apply is a reasonable regulation as long as it is not used to suppress the speaker's viewpoint. *Perry,* 460 U.S. at 46, 103 S.Ct. at 955. In the present case, the School District simply desires to keep the "podium of politics off school grounds." Indeed, the Third Circuit has recently stated:

Since elementary and secondary schools, unlike universities, are not the academic battleground for clashes among contending lines of thought, particularly since the level of student maturity rarely reaches the more advanced level of those attending college, it is unlikely that school authorities would seek to create a truly open forum in a high school environment for unregulated dialogue and inquiry. Because of the inherent nature of a secondary school, any

forum created has purposes which are narrower, and uses more exclusive than a forum such as in *Widmar* or one open generally to all forms of communication by the public.

*Bender, et al. v. Williamsport Area School District,* 741 F.2d 538 at 548 (3d Cir.1984). Further, because school systems are part of the government with the expressed purpose to educate, it is logical that the School Board would not desire its facilities to be a podium for every political group wishing to express its point of view. Accordingly, this Court finds the regulation prohibiting political speech at these two facilities to be reasonable.

■ Next the LMHS Boys' Gym must be categorized for purposes of determining the proper standard to evaluate prior restraint on first amendment rights. Plaintiff argues vigorously that this forum is a limited public forum in the sense that the government was not compelled to open the forum as a public forum. However, once it did, the School Board would be powerless to deny it as a platform for first amendment speech, short of denying all parties access. *Perry, supra.* Notwithstanding, plaintiff's contention must fail since the gym's use is tightly controlled by the School District, with access after school hours only by key and permission strictly regulated by the School Board. The only non-sponsored school events which have been granted permission have been those which are primarily athletic and for the purpose of raising funds for a public charity. Although the plaintiff argues that because the School District opened the doors for a limited purpose, that is, athletic events for charitable purposes, it must therefore open it for all purposes; this Court does not find the Boys' Gym a limited forum.[6] Because of the close reins on the control of the facility by the School District, this Court finds that the gym falls within the third category of public property. As discussed above, where a public

---

**6.** If this gym were to be found to be a limited public forum, it would be limited to those areas of athletic events used to raise funds for a public charity. *See Perry,* 460 U.S. at 46 n. 7,

103 S.Ct. at 955 n. 7; *Bender, et al. v. Williamsport Area School District, et al.,* 741 F.2d 538 at 544 (3d Cir.1984). However, since this is not before this Court, it need not be addressed.

forum is not found, the government can regulate speech when there is a rational basis for the regulation, and it is not done to censor a particular point of view. *Perry, supra.* Here, the desire not to become the battleground of political ideas for the community, as well as understanding the purpose of our secondary schools, provides a rational basis for the regulation of forbidding a political exposition/peace fair at the LMHS Boys' Gym. The plaintiff has not brought forth any evidence showing that the defendants sought to censor plaintiff because of its point of view. Therefore, this Court finds the denial of use of the Boys' Gym constitutionally valid.

Last, the Court must examine whether the defendants have created a limited public forum at Arnold Field. Arnold Field is used primarily by the School District for athletic purposes. Indeed, it is an athletic field. Organized use of this field by non-school sponsored events is clearly scrutinized. Athletic events for the purpose of fund raising for public charities are the only activities which have been permitted on the field; excepting the annual Memorial Day ceremonies which have been held with the permission of the School District. Certainly the athletic events for charity do not include a discussion of current event topics which are at the nexus of the battle between the various political thought within in this nation, as is an anti-nuclear/peace exposition. The charitable athletic events where no solicitation or leaflet distribution takes place do not constitute political activity.

Turning now to the Memorial Day ceremony, permission for use of the field is requested each year. Further, because any Memorial Day ceremony is only tangentially related to politics, no limited political forum is created for political speech.

The plaintiff did not produce any evidence that shows defendant sought to censor its point of view. Since Arnold Field is not a public forum (which plaintiff concedes) or limited public forum, the only additional criteria required of the School Board is that its regulation have a rational

basis. As stated above, the School Board desires not to become the battleground for political ideas in the community. Its primary function is to educate the students and not to become the never ending forum for political debate. *See Bender, et al. v. Williamsport Area School District, et al.,* 741 F.2d 538, 548 (3d Cir.1984).

Because this case deals with the academic forum, the Court was extremely sensitive in evaluating the delicate issues presented. See *Healy v. James,* 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972). Indeed, in an overabundance of caution, this Court granted the preliminary injunction. However, after reconsidering this matter, the permanent injunction must be denied.