**STUDENT COALITION FOR PEACE**

v.

**LOWER MERION SCHOOL DISTRICT BOARD OF SCHOOL DIRECTORS, et al.**

Civ. A. No. 84–1017.

United States District Court,
E.D. Pennsylvania.

April 8, 1986.

Stephen F. Gold, Philadelphia, Pa., for plaintiff.

Thomas Masterson, Frank L. Corrado, Jr., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

Presently before me is plaintiff Student Coalition for Peace's (SCP) motion for a permanent injunction. SCP is a non-school sponsored student organization of the Lower Merion High School (LMHS). SCP seeks to conduct a public anti-nuclear exposition on certain parcels of the LMHS's property. The Lower Merion School District (LMSD) and other defendants[1] have refused to grant permission to the SCP to use any parcel. On March 22, 1984, in an abundance of caution, I granted a preliminary injunction prohibiting the LMSD from denying the use of its property to SCP. I denied the permanent injunction on September 28, 1984, 596 F.Supp. 169, after further study of the constitutional issues. Subsequently, SCP made a motion for reconsideration, bringing to the attention of the court a recently enacted statute, the Equal Access Act, 20 U.S.C. § 4071. In a Memorandum dated January 31, 1985, 618 F.Supp. 53, I held that the Equal Access Act did not apply because the SCP desired to invite nonstudents to its exposition, and "it ha[d] not been the policy or practice of the [LMHS] to *indiscriminately permit* the use of the facilities in question to *other noncurricu[lar] related student* groups which desired to invite nonstudents/the general public." *Id.* at 60. (emphasis added).

SCP appealed my rulings. The Third Circuit Court of Appeals affirmed the ruling of September 28, 1984 concerning the constitutional questions presented, but vacated the ruling of January 31, 1985 and remanded it for a further evidentiary hearing. 776 F.2d 431.

The Third Circuit in vacating the January 31, 1985 ruling held:

The legislative history supports the view that if the school's limited open forum includes nonstudent participation, then nonstudent participation must be permitted for all such student groups, subject only to reasonable, nondiscriminatory regulation.

\* \* \* \* \* \*

We read the Act to give affected school districts a choice; either to create a limited open forum open to all student groups on an equal basis, or to refuse access to all noncurricular student groups.

\* \* \* \* \* \*

On remand, the appellants should have the opportunity to prove that the appellees' policy or practice *after* August 11, 1984 with respect to noncurricular student groups created a limited open forum broad enough to include the contemplated use.

*Id.* at 442–443 (footnotes omitted).

The Third Circuit's holding remanding the case back before this court so that evidence could be offered by plaintiff to establish that the parcel or parcels SCP desired for its use, have been used during noninstructional time by other noncurricular student organizations which invited the public to any of its functions since the enactment of the Equal Access Act. Indeed, the question this court is faced with is whether or not since the enactment of the Equal Access Act on August 11, 1984, the LMSD has created a limited open forum which includes nonstudents pursuant to 20 U.S.C. § 4071 at any of the parcels or locations the plaintiff has requested to use for its peace exposition.

On remand I allowed the plaintiff to file an amended complaint. The amended complaint incorporated the pleadings of the original complaint. In the original complaint plaintiff sought the use of one of the following sites for its antinuclear peace exposition: Arnold Field, Pennypacker Field, the courtyard surrounding the flag pole, and the Boys' Gym. Plaintiff, by its amended complaint, seeks to expand the list of sites it wishes to utilize for its antinuclear peace exposition. Plaintiff, in

---

1. Board of School Directors, Paul C. Heintz, Anne M. Smith, Nelson W. Ray, Jr., Reaves C. Lukens, Jr., Henry C. Lucas, III, Regina B. Cohen, John P. Giangiulio, J. Roger Williams, Jr., Meridyth M. Senes, James B. Pugh, and Robert M. Ruoff.

paragraph 5 of its amended complaint, asserts: "Since August 11, 1984, these noncurricular related student groups have met throughout the school premises, including but not limited to the gymnasium, auditorium, Pennypacker Field, parking lots and classrooms." In paragraph 6 plaintiff asserts: "Plaintiffs request to use the school's premises for a 'student sponsored and student run Educational Afternoon for Nuclear Disarmament' on Saturday, May 10, 1986." It appears that plaintiff seeks to expand the relief sought, namely by seeking additional parcels. At this stage of the litigation, amendment is only by leave of court. Fed.R.Civ.P. 15. While I consented to an amendment seeking relief pursuant to the Equal Access Act, at this juncture I do not find it appropriate that an amendment be permitted to name additional parcels of the school's grounds. Thus, I will restrict my review of the original four parcels named in the complaint.

A hearing was conducted on February 6, 1986. Pursuant to Fed.R.Civ.P. 52, the following are the findings of fact and conclusions of law:

## FINDINGS OF FACT

1. The Lower Merion School District receives federal financial assistance.

2. No evidence concerning the use of Arnold Field relative to student noncurricular activity was offered by plaintiff.

3. No evidence concerning the use of the courtyard surrounding the flag pole relative to student noncurricular activity was offered by plaintiff.

4. Prior to August 11, 1984 Pennypacker Field had been utilized by the students and the faculty in an "Activities Fair". During 1985 the "Activities Fair" was to be held on Pennypacker Field, and was so granted permission by the School District; however, it was "rained out" and, therefore, it was moved to the school cafeteria.

5. No outsiders or the general public were to be invited to participate in the "Activities Fair" on Pennypacker Field. Indeed, outsiders and the general public did not attend the "Activities Fair" in the cafeteria. However, there were outside vendors selling refreshments.

6. The "Activities Fair" on Pennypacker Field was to be held during instructional time. Indeed, the "Activities Fair" held in the cafeteria was during instructional time.

7. The "Activities Fair" on Pennypacker Field was a school sponsored event, although a catalyst in bringing it about was the students.

8. The "bike hike", although disputed by the parties as to whether or not it was a student initiated or non-student initiated event, was nevertheless not authorized to use Pennypacker Field nor did defendant LMSD ever grant permission for the bike hike to utilize Pennypacker Field.

9. A volley ball marathon was held in the Boys' Gym subsequent to August 11, 1984. Permission to use the Boys' Gym was granted by the LMSD.

10. The organization which initiated the volley ball marathon is comprised of students. The volley ball marathon is considered a noncurricular related student affair.

11. The general public was invited to attend the volley ball marathon in the Boys' Gym.

12. The volley ball marathon was held during non-instructional time.

## DISCUSSION

■ The defendants contend that the Equal Access Act codified constitutional principals of the First Amendment as to limited public forums. A forum may be considered a limited public forum where access is limited to a certain group or limited to the content of the speech (of course, as long as it is view point neutral).[2] It is defendants' position that the LMSD, by its expression in its rules and regulations, for-

---

**2.** *Widmar v. Vincent,* 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981) (forum limited to school students). A forum may be limited to topics or subject matter. *Perry Education Assn.*

*v. Perry Local Educators' Assn.,* 460 U.S. 37, 46 n. 7, 103 S.Ct. 948, 955 n. 7, 74 L.Ed.2d 794 (1982).

bids political speech of any kind, no matter what the view point.

Defendants have argued that the fact that a charitable or athletic event takes place on certain parcels does not require a political event be allowed on these same parcels. The plaintiff has taken a contrary position. Plaintiff contends that the Equal Access Act expands first amendment rights to free speech.

■ At first blush it appears that Congress was attempting to expand the application of the Supreme Court's decision in *Widmar v. Vincent*, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981) rather than expand the concept of a limited public forum when it drafted the Equal Access Act.[3] However, after further analysis I find Congress sought also to prohibit the denial of noncurricular related student groups' meetings on the basis of subject matter, namely as to religious, political, philosophical, or other content of the speech. 20 U.S.C. § 4071(a). Thus, I find that Congress did, by enacting the Equal Access Act, afford students the right to use school property beyond the constitutional guarantees in the first amendment.

## CONCLUSIONS OF LAW

■ 1. Plaintiff had the burden to establish the LMSD created limited open forums pursuant to 20 U.S.C. § 4071(b).

2. Plaintiff failed to come forward with any evidence that a limited open forum was created by LMDS at Arnold Field or the courtyard which surrounds the flag pole.

3. Pennypacker Field is not a limited open forum, 20 U.S.C. § 4071(b) because of the intent of the LMSD to allow the 1985 Activities Fair on the field.

4. The LMSD has created a limited open forum at the Boys' Gym.

5. The SCP is a non-curricular related student group.

6. The anti-nuclear peace exposition the SCP seeks to have on Saturday, May 10, 1986, will not substantially or materially interfere with the orderly conduct of educational activities at LMHS.

7. The general public does not regularly attend SCP's meetings.

8. Defendants have prohibited the SCP from exercising their rights as to access to the Boys' Gym pursuant to the Equal Access Act.

9. SCP does not have an adequate remedy at law.

## CONCLUSION

While I find that it is appropriate here to enjoin the LMSD from denying the use of the Boys' Gym to the SCP, this does not prohibit the LMSD from protecting its property by reasonable regulations. In an earlier hearing, certain witnesses for the defendants expressed concern that allowing use of the gym by people in "street shoes" would damage the floor. *See also,* paragraph 23 of the complaint. Defendants may seek assurances from plaintiff so that damage does not result. *Cf.* 20 U.S.C. § 4071(d)(3) ("Nothing in this subchapter shall be construed to authorize the United States or any State or political subdivision thereof—.... (3) to expend public funds beyond the incidental cost of providing the space for student-initiated meetings.")

---

3. *See* my Opinion of January 31, 1985, 618     F.Supp. at 55–59.