Keara SEASE, et al., Plaintiffs,

v.

The SCHOOL DISTRICT OF
PHILADELPHIA,
Defendant.

Civ. A. No. 91–2113.

United States District Court,
E.D. Pennsylvania.

Jan. 4, 1993.

J. Michael Considine, Jr., West Chester, PA, William A. Bonner, Media, PA, for plaintiffs.

Christina Rainville, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, William H. Brown, III, Philadelphia, PA, for defendant.

Gilda Coker–Johnson, pro se.

## MEMORANDUM–ORDER

CLIFFORD SCOTT GREEN, Senior District Judge.

Plaintiffs, various student and former members of the Central High School Gospel Choir (the "Gospel Choir"), brought this action pursuant to 42 U.S.C. §§ 1983 and 1988, 28 U.S.C. §§ 2201 and 2202 and the First, Fifth, and Fourteenth Amendments to the United States Constitution, alleging, *inter alia,* that Defendant, the School District of Philadelphia's (the "School District") policies regarding the Gospel Choir violate federal law and Plaintiffs' constitutional rights.

Defendant filed an answer denying these allegations and filed a counterclaim requesting, *inter alia,* that the Court declare that the School District's actions with respect to the Gospel Choir were consistent with the requirements of the Equal Access Act 20 U.S.C. § 4071 *et seq.* Plaintiffs and Defendant have moved the Court for Summary Judgment.

This court has jurisdiction of the constitutional and federal claims pursuant to 42 U.S.C. §§ 1983 and 1988. Since Plaintiffs' claims arise in Philadelphia, Pennsylvania, venue is proper under 28 U.S.C. § 1391.

Upon consideration of the parties' motions for summary judgment, the responses thereto, oral argument and the record, and for the reasons set forth below, Plaintiffs' motion for summary judgment must be denied and Defendant's motion for summary judgment must be granted.

## I. FACTS

In approximately October, 1987, two students at Central High School ("Central High") in Philadelphia, Pennsylvania, asked Donald Rivera, a Central High teacher, and then director of the Central High Black Student Union, whether they could establish a gospel choir at the school. Mr. Riv-era responded favorably, and the students asked a school secretary, Willma Safford, to head and direct the gospel choir. This choir became known as The Central High School Gospel Choir ("Gospel Choir").

The Gospel Choir is a non-credit, non-curriculum student group that meets on a weekly basis during non-instructional hours at Central High. The Gospel Choir has sung at school assemblies during the school day at Central High, and has used the school's public address system and its organ.

In addition to performing at school assemblies, the Gospel Choir held its 1988, 1989, and 1990 annual Spring Concerts in Central High's auditorium. The Gospel Choir paid Central High a $128.00 fee for the use of Central High's premises after school hours for its preparation for the Spring Concerts in 1989 and 1990. Between 1987 and 1991, the Gospel Choir also performed at churches, universities, public schools, theaters, on television, and in other public places throughout the Philadelphia area.

### *Mrs. Safford's Involvement With The Gospel Choir*

Mrs. Willma Safford is a full time employee of Central High, where she has worked as a secretary since September 1987. She has been employed by the School District since 1986 in other capacities. Mrs. Safford has served as the director of the Gospel Choir since its inception, has presided over every Gospel Choir performance since 1987, and has attended virtually each of its practices.

Mrs. Safford is responsible for the overall leadership, organization, administration and management of the Gospel Choir. She regularly organizes and conducts its practice sessions, is responsible for its fundraising, books concerts for the Gospel Choir outside of Central High, obtains buildings and P.A. systems for its concerts, and corresponds with the general public—using the Central High letterhead—on behalf of the Gospel Choir. In one such letter, Mrs. Safford wrote to the University of Dela-

ware, regarding an upcoming concert, "We are looking forward to a grand time in the Lord." In another letter she wrote: "We look forward to coming and having a good time in the Lord."

Mrs. Safford testified on deposition that she used the Central High Letterhead for the Gospel Choir's correspondence because, "we (the Gospel Choir) were part of the school ... I saw us as representatives of the school." (Safford Dep., Vol. II, at 60–62.) Moreover, Mrs. Safford testified that the Gospel Choir used "Central High" as part of its name because the Gospel Choir believed that it represented Central High. (Safford Dep., Vol. II, at 60–61.)

Mrs. Safford also receives letters at the school from churches and other organizations requesting the Gospel Choir to perform or confirming Gospel Choir performances. Additionally, Mrs. Safford receives telephone calls on the Gospel Choir's behalf at Central High.

Mrs. Safford has led Gospel Choir performances without "clocking out" as school secretary, or receiving a deduction in pay. She has occasionally written songs which the Gospel Choir has performed. Plaintiffs' have represented that the Gospel Choir could not exist without Mrs. Safford's leadership. (Amended Complaint ¶ 34.)

### Involvement By Other School Officials and Non–Students

Other school employees in addition to Mrs. Safford are identified as being connected with the Gospel Choir. Mrs. Clara Tolbert, the assistant principal of Central High, is listed as the Gospel Choir's sponsor on a 1991 Program for a Gospel Choir performance, and Dr. Sheldon Pavel, Central High's President, is listed as "president".

Although the Gospel Choir is composed largely of Central High Students, several "non-school persons", or non-students are also involved. For example, former Central High students continue to sing with the Gospel Choir. The Gospel Choir also employs James Plez, a non-student, as its pianist. Mr. Plez attends every practice and participates in the selection of music for the Gospel Choir. Mr. Plez also writes music for the Gospel Choir, and is paid for his contributions.

### Religious Activities of the Gospel Choir

The record reveals that virtually every song performed by the Gospel Choir prior to the initiation of this lawsuit contained some reference to God or Jesus Christ.

Since the Gospel Choir's inception in 1987, through 1990, the members of the Gospel Choir routinely joined together in prayer before practices and performances. Several of these prayers took place at Central High, with Mrs. Safford participating. Mrs. Safford testified in her deposition that she was "sure" that she led the members in prayer on occasion. (Safford Dep., Vol. I at 63.)

At least one Gospel Choir program book for its Spring concert is replete with religious symbols, quotations from Scripture, and references to "Jesus", "God", "Christ", "Lord", and "Our Creator". Undisputed testimony reveals that during one of the Spring Concerts all Pastors attending were admitted free, and were asked to stand to be acknowledged by the audience. Also at a Spring Concert, a minister encouraged the praise of God and led the chant, "Jesus is a mighty God". He asked the audience—which he referred to as a congregation—to join him in prayer which was being delivered as song. On another occasion, Mrs. Safford stated, "you must know Jesus to be saved."

### The Gospel Choir's Finances

From its inception in 1987 through 1991, the Gospel Choir received "donations" or "free will offerings" from the places that it performed, including churches. Members of the Churches at which the Gospel Choir performed collected the offerings and gave the collected money to Mrs. Safford.

The money collected from the church offerings is included in monies given to various members of the Gospel Choir in the form of scholarships. On occasion, parents

of the Gospel Choir members have also received money.

Prior to the 1990–91 school year, Central High School handled the Gospel Choir's money in accordance with School District rules. In 1991, however, several parents of Gospel Choir members took control of all of the Gospel Choir's finances. The Gospel Choir raised over $7,500.00 at its 1991 Fourth Annual Spring Concert, and returned $263.00 to the School District.

### The Cause of This Litigation

On April 28, 1988, Dr. Pavel, the President of Central High, wrote a letter to Mrs. Safford and others summarizing a recent meeting about the Gospel Choir. At this meeting there was a concern that the current structure of the Gospel Choir violated the Equal Access Act recently enacted by Congress. Dr. Pavel's letter stated, *inter alia*, that "any future [Gospel Choir] programs are to be in *concert* format, and not include any outside speakers or 'religious messages'." (Emphasis in original).

In a memorandum dated December 3, 1990, Pavel provided the Gospel Choir with three alternatives: (1) the Gospel Choir would continue as it had been functioning, but move its activities "off-site" (away from Central High); (2) the Gospel Choir could change to a totally student-directed organization; or, (3) the Gospel Choir could change its organization to comply with the new [School District] policy.[1] There being no change in the Gospel Choir's activities, on December 17, 1990 Dr. Pavel again wrote to Mrs. Safford in an attempt to bring the Gospel Choir into compliance with the law, as the School District interpreted it. In that memorandum Dr. Pavel stated:

Before the Gospel Choir may practice again I must receive and review those songs which are going to be included within the repertoire of the choir. I know and appreciate Dr. Pritchett's involvement in attempting to assist in developing a repertoire which can be used within a school setting, with a School District employee responsible for rehearsals. After consulting with both Dr. Waiters and Mr. Tischler, we must receive this repertoire and review it before additional rehearsals can take place.

Pavel Dep., Exhibit 2.

Pavel also wrote a letter to Dr. Wendell Pritchett, Administrator of Musical Education for the School District, requesting him to assist the Gospel Choir in developing an "appropriate" repertoire. Mrs. Safford wrote to Pavel to explain that some of the music Pritchett suggested could not be performed by the Gospel Choir. Mrs. Safford testified that Mrs. Anne Waiters, Regional Superintendent of the School District, also told the Gospel Choir not to practice until the Gospel Choir provided school officials with a repertoire.

The Gospel Choir never submitted its repertoire to Dr. Pavel. Nevertheless, the Gospel Choir continued to operate as it had been operating. For example, at all times from December 17, 1990, through the present, the Gospel Choir continued to practice and perform wherever and whenever it chose, and to sing any song it chose. Rehearsals at Central High were not eliminated by the School District or Central High officials. At Dr. Pavel's request, however, Assistant Principal Clara Tolbert, Anne Waiters, and Dr. Wendell Pritchett, sat in on Gospel Choir practices in order to determine if the Gospel Choir and its activities complied with the Equal Access Act. After viewing the Gospel Choir's practices first hand, school officials suggested changes in the Gospel Choir's activities and its repertoire of songs, which, the officials believed, would enable the Gospel Choir to continue functioning without violating the Equal Access Act.

Plaintiffs maintain that school officials instructed Mrs. Safford that the Gospel Choir should cease singing songs with "God" or "Jesus" included in the lyrics when they sang at non-church locations. Plaintiffs also contend that on another oc-

---

1. Mr. Pavel testified in his deposition that the "new" School District Policy was for all activities of student political and religious clubs to be conducted in accord with the provisions of the Equal Access Act.

casion, school officials further instructed Mrs. Safford to expand the Gospel Choir's musical repertoire so that no more than 50% of the songs included the words "Jesus" or "Christ".

The School District maintains that school officials also recommended expanding the Gospel Choir's repertoire to include spirituals and African–American cultural music, but this suggestion was rejected by the Gospel Choir.

On January 28, 1991, Ms. Waiters, in a meeting with members of the Choir, offered the Gospel Choir options similar to those offered by Dr. Pavel in his December 3, 1990 memorandum to the Gospel Choir: (1) that they continue their current program of songs both on and off campus, but without school personnel participating in or sponsoring the group; or, (2) modify the repertoire to include no more than 20% religious music, in which case the Gospel Choir could continue with its current sponsorship as an official Central High organization.

Plaintiffs subsequently filed this lawsuit alleging that the School District violated their constitutional rights by asking to review the Gospel Choir's repertoire before the Gospel Choir could practice on school property again, and by instructing the Gospel Choir that it could no longer sing under the direction of a full-time school employee. Plaintiffs allege that these actions violated their First, Fifth, Thirteenth and Fourteenth amendment rights.

Plaintiffs seek injunctive and declaratory relief as follows: (1) Plaintiffs' allege that they will suffer irreparable harm, injury, and damage if a temporary restraining order is not granted precluding the School District from forbidding Willma Safford to continue as director of the Gospel Choir, as well as precluding the School District's policy of reviewing the Gospel Choir's material to ensure compliance with the Equal Access Act; (2) a declaration that the School District's policy of prior review, and policy

that the Gospel Choir not be permitted to sing any religious music violates the Gospel Choir's First Amendment rights; (3) a declaration that the School District's policy forbidding Willma Safford to continue as director of the Gospel Choir violates the Gospel Choir's First Amendment rights; (4) a declaration that the School District's treatment of the Gospel Choir violates their equal protection rights, because the School District allegedly discriminated against the Gospel Choir on the basis of the race of the majority of its members; [2] and, (5) a declaration that the School District's "prior restraint" of the Gospel Choir is unconstitutional.

After several months of discovery, including several depositions, the School District moves this Court for summary judgment. The School District asserts that the undisputed material facts demonstrate that: (1) the Gospel Choir functions in violation of the Equal Access Act; (2) the Gospel Choir functions in violation of the Establishment Clause; and, (3) the School District's actions which were taken to ensure compliance with the Equal Access Act and the Establishment Clause were reasonable and do not create a cause of action for which the School District can be held liable. Plaintiffs' oppose this motion and have filed their own motion for summary judgment with respect to the allegations in Plaintiffs' Amended Complaint. Defendant has opposed Plaintiffs' motion.

Since there are no material facts in dispute, this case is appropriate for summary judgment. For the reasons set forth below, Defendant's Motion for Summary Judgment must be granted, and Plaintiffs' motion for Summary Judgment must be denied.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that "[summary] judgment sought shall be rendered forthwith if

**2.** A Gospel Choir member's parent filed an identical complaint with the United States Department of Education Office for Civil Rights, alleging an equal protection violation based upon

racial discrimination by the School District against the Gospel Choir. The Office for Civil Rights determined that no discrimination had occurred.

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).

The Supreme Court has interpreted Rule 56, stating that:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be, 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Court has further stated that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). However, in making this determination all inferences must be drawn in favor of the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513 (citation omitted). Additionally, summary judgment is appropriate when a party is unable to produce evidence upon which a jury could reasonably find the facts which that party has the burden of establishing. *Id.* at 254, 106 S.Ct. at 2513 (citation omitted). For the reasons that follow, I conclude that Plaintiffs are unable to produce evidence sufficient to permit a jury to reasonably find in their favor.

Therefore, summary judgment in favor of the Defendants is appropriate.

## III. DISCUSSION

Plaintiffs contend that the School District's policies, restricting the Gospel Choir's access to school facilities so long as Willma Safford continues to actively participate in the Gospel Choir's activities, violates several constitutional rights of the Gospel Choir's members. Defendant, on the other hand, asserts that the School District has a right to condition access to school facilities: indeed, Defendant avers, the School District is obligated to condition access to school facilities in accord with the statutory provisions enumerated in the Equal Access Act codified at 20 U.S.C. § 4071 *et seq.*

### The Applicability of the Equal Access Act to the Gospel Choir

The Equal Access Act was enacted to clarify and confirm the First Amendment rights of freedom of speech, freedom of association, and free exercise of religion which accrue to public school students who desire to voluntarily exercise those rights during extracurricular or non-instructional periods of the school day when the school permits extracurricular activities. S.Rep. No. 357, 98th Cong., 2d Sess. at 3 (1984).

This act was intended to represent a careful balancing of the First Amendment Free Speech and Establishment Clause interests at stake. Cong.Rec. 32066, 32067 (Oct. 11, 1984) ("[t]he Congressional intent in passing the Equal Access Act was to develop legislation that respects both the Establishment Clause and the Free Exercise and Free Speech Clauses of the First Amendment".) Plaintiffs do not contend, nor is there any authority to suggest, that there is an absolute right—constitutional or otherwise—to access to public school facilities for use by an individual or group of individuals during non-instructional hours. Indeed, a public school is not a traditional public forum; therefore, any school may exercise the right to refuse access to all during non-instructional hours. *See, e.g., Student Coalition v. Lower Merion*

*School Dist. Bd.*, 776 F.2d 431, 443 (3d Cir.1985).

■ The Gospel Choir's rights, if any, to equal access to Central High facilities, are governed by the Equal Access Act. Accordingly, any access to school facilities provided by Central High School or the School District to the Gospel Choir must be in accord with the requirements and subject to the restrictions of the Act.

The Equal Access Act states in part: It shall be unlawful for any public secondary school which receives Federal financial assistance and which has a limited open forum to deny equal access or a fair opportunity to, or discriminate against, any students who wish to conduct a meeting within that limited open forum on the basis of the religious, political, philosophical, or other content of the speech at such meetings.

20 U.S.C. § 4071(a).[3]

The Act goes on to provide restrictions on the use of school premises for the purposes set forth in § 4071(a); in order to ensure that there is no violation of the Establishment Clause, among other things, on the part of the school, the Act states:

Schools shall be deemed to offer a fair opportunity to students who wish to conduct a meeting within its limited open forum if such school uniformly provides that—

1) the meeting is voluntary
2) there is no sponsorship of the meeting *by the school,* the government, *or its agents or employees;*
3) employees or agents of the school or government are present at religious meetings *only in a nonparticipatory capacity;*
4) the meeting does not materially and substantially interfere with the orderly conduct of educational activities within the school; and
5) *nonschool persons may not direct, conduct, control, or regularly attend activities of student groups.*

20 U.S.C. § 4071(c) (emphasis added).

It is undisputed that Central High has provided a limited open forum to extracurricular groups. Therefore, the Equal Access Act is triggered and Central High's and the Gospel Choir's rights and actions relating to school access are governed by the Act. The express language of the Act clearly prohibits anyone other than a student from actively participating in an extracurricular student religious meeting. 20 U.S.C. § 4071(c).

### The Religious Nature of The Gospel Choir's Activities

In the case at bar, the Gospel Choir's meetings and performances taken as a whole are clearly religious in nature. The director of the Gospel Choir has testified that a great majority of the Gospel Choir's repertoire consists of songs related to "Jesus Christ", "God", "Our Savior", and the like. (Safford Dep., Vol. I at 99.) Moreover, as discussed above, at several Gospel Choir meetings, and before every Gospel Choir performance, the members joined together in prayer. Several of these prayers took place at Central High. In fact, Mrs. Safford, a school employee, led the members in prayer on occasion. (Safford Dep. at 36–37, 63.) At least one Gospel Choir concert program is replete with religious symbols, quotes from scripture, and references to "Jesus", "God", and "Our Savior".

The Equal Access Act certainly entitles Central High students to access to Central High and its facilities to engage in the activities conducted by the Gospel Choir, but only if the activities are student led and

---

3. A "limited open forum" exists whenever a public secondary school "grants an offering to or opportunity for one or more noncurriculum related student groups to meet on school premises during noninstructional time." 20 U.S.C. § 4071(b). The term "meeting" is defined as including "those activities of student groups which are permitted under a school's limited open forum and are not directly related to the school's curriculum." *Id.* § 4072(3). The term "noninstructional time" is defined as "time set aside by the school before actual classroom instruction begins or after actual classroom instruction ends." Since, under these definitions, Central has provided a limited open forum to several student groups, the Equal Access Act is clearly applicable to the policies of Central and the School Board.

initiated. 20 U.S.C. § 4071(c); *see also Board of Education of the Westside Community Schools v. Mergens,* 496 U.S. 226, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990). Here the Gospel Choir's Activities are led by Mrs. Safford, a school employee, which is expressly proscribed by the statute. 20 U.S.C. § 4071(c)(3); *Mergens,* 496 U.S. at 253, 110 S.Ct. at 2373.

### Specific Violations of The Equal Access Act

The School District, if it allows the Gospel Choir to continue to operate as it is, will fail to meet the criteria of the Equal Access Act in a number of significant and substantial ways:

1. The Gospel Choir is sponsored by Central High and the School District, has an official School District Employee as its sponsor, and another School District Employee as its director. A violation of section 4071(c)(2) of the Act.

2. Mrs. Safford is present at all practices and meetings of the Gospel Choir in a *participatory* capacity. A violation of sections 4071(c)(2) and (c)(3) of the Act.

3. A number of non-school persons[4] regularly attend the activities of the Gospel Choir. A violation of section 4071(c)(5) of the Act.

Plaintiffs in their Motion for Summary Judgment, and in their opposition to Defendant's Motion for Summary Judgment, do not question the constitutionality of the Equal Access Act. The Supreme Court has upheld the constitutionality of the Act in *Board of Education of the Westside Community Schools v. Mergens,* 496 U.S. 226, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990) (Equal Access Act not state endorsement of religion because act regulates private student speech and expressly prohibits school involvement). The *Mergens* Court recognized that the Equal Access Act by, "expressly limit[ing] participation of school officials at meetings of student religious groups", allowed for, "little if any risk of official state endorsement or coercion." *Mergens,* 496 U.S. at 251, 110 S.Ct. at 2372.

Plaintiffs, rather than disputing the validity of the Equal Access Act, instead vacillate between several inconsistent and untenable assertions to support their contention that the Gospel Choir's activities do not violate the Equal Access Act.

■ First, Plaintiffs correctly state that the Equal Access Act does not define "religious" activities or "religious organizations". Then, in order to avoid being held to the restrictions under the Act, Plaintiffs argue that the Gospel Choir is an African–American Cultural organization, and that its repertoire is comprised of songs that are selected from the vast history of African–American Culture, dating from "before slavery to the present day", (Amended Complaint ¶ 22). These songs, Plaintiffs contend, are no longer considered religious, but instead are recognized for their cultural history and significance in African–American tradition. Accordingly, Plaintiffs aver that the Gospel Choir's meetings are not religious. Plaintiffs' Memorandum of Law at 4 ¶ 2. Plaintiffs contend that as a non-religious organization, there can be no establishment clause violation due to Mrs. Safford's participation; therefore, Plaintiffs argue that the Act's prohibition against employee participation, which is expressly limited to student religious meetings, is inapplicable to the Gospel Choir. Accordingly, Plaintiffs assert, they should be provided access to the school to continue their activities, with Mrs. Safford as their director.

Plaintiffs rely on *Florey v. Sioux Falls School District,* 619 F.2d 1311 (8th Cir. 1980) to support their contention that the Gospel Choir's activities are non-religious. In *Florey,* the court upheld a school district's policy permitting public school celebrations of holidays which have both "reli-

---

**4.** Although the Equal Access Act does not define "nonschool persons", courts have interpreted section 4071(c)(5) as including in its prohibition from regular participation by non-school persons, non-students who regularly attend these types of events. *See, e.g., Student Coalition for Peace v. Lower Merion School Dist. Bd. of Student Directors,* 776 F.2d 431 (3d Cir.1985), on remand 633 F.Supp. 1040 (E.D.Pa.1986).

gious and secular bases." The *Florey* Court noted that Christmas carols can be both religious (*e.g.* "Silent Night") and secular (*e.g.* "Frosty the Snowman"). *Id.* at 1316–17 n. 5. Plaintiffs' reliance on *Florey*, however, is misplaced, since the evidence produced from the Gospel Choir's own director shows that prior to the filing of this lawsuit the Gospel Choir's music consisted solely of religious songs. (Safford Dep., Vol. I, at 99.)

Plaintiffs further rely on *Florey* to support their contention that the cultural significance of the Gospel Choir's repertoire renders it a non-religious organization. The *Florey* court stated that certain Christmas carols: "can be traced back to as early as 1512," and they have "achieved a cultural significance that justifies there being sung in the public schools ... *if done in accordance with the policy and rules adopted by that school district.*" *Id.* (emphasis added).

Although Plaintiffs suggest that the songs sung by the Gospel Choir enjoy a cultural significance similar to that described in *Florey*, the deposition testimony of Mrs. Safford undercuts this suggestion, since, as she testified, most if not all of the songs performed by the Gospel Choir between 1987 and 1990 were written during the past ten years, (Safford Dep., Vol. I, at 34, 91–92.) many if not all of these songs are also performed by white gospel groups. (*See* Safford Dep., Vol. I, at 109–10.) Also, the *Florey* court emphasized the importance of adhering to school district policies and rules—a point which Plaintiffs continually ignore.[5]

Even when the Court considers the evidence in a light most favorable to the Plaintiffs, thus finding that the Gospel Choir's repertoire enjoys some cultural significance, the Gospel Choir's activities are still subject to the requirements of the Equal Access Act, and its prohibitions, since those activities are clearly primarily religious.

Second, after claiming that the Gospel Choir is not a religious organization, and is not subject to the restrictions in the Equal Access Act, Plaintiffs, in their September 16, Memorandum of Law, reverse positions and assert that the School District is discriminating against the Gospel Choir because of the religious nature of its speech, and requests this Court to enjoin the School District from so doing. Memorandum of Law at 7, ¶ 4. Defendant correctly maintains that Plaintiffs' cannot have it both ways. "Either the Gospel Choir's meetings are religious—(due to the religious nature of its songs [and practices])—in which case Mrs. Safford's participation is a violation of the Equal Access Act—or the Gospel Choir's meetings are non-religious, in which case, the alleged restrictions placed on the Gospel Choir would not indicate a governmental "disapproval of religion." Defendant's Response to Plaintiffs' Memorandum of Law at 1.

Third, and finally, Plaintiffs', while they do not dispute that Mrs. Safford sponsors and regularly participates in the Gospel Choir's activities, contend that the ban on participation by school employees included in the Equal Access Act does not apply to Mrs. Safford, because: 1) she is not acting within the scope of her employment when she leads the Gospel Choir; 2) her "duties as an employee of Central High do not include direct supervisory or didactic duties, or involve authority over students" (Amended Complaint ¶ 23); and, 3) she is not acting as an employee when she directs the Gospel Choir's activities, since the Gospel Choir's activities occur after school hours during non-instructional time.

Plaintiffs' contentions are unsupported by the undisputed evidence and the law. Evidence clearly establishes that Mrs. Safford holds herself out as a Central employee when fulfilling her responsibilities for the Gospel Choir. Indeed, Mrs. Safford writes letters on the Gospel Choir's behalf on Central High stationary.

---

5. In addition to violating the Equal Access Act, the Gospel Choir violates several School District rules. Two of these rules are the prohibition of regular participation in an extracurricular student organization by a non-school person, and the requirement that all club money be held and supervised by the school.

In their motion for summary judgment, Plaintiffs' contend that Mrs. Safford is both, 1) a school employee when she leads the Gospel Choir (in order to avoid the Act's proscription on involvement by non-school persons), Plaintiffs' Memorandum, at 31–32, and 2) not a school employee when she leads the Gospel Choir (in order to avoid the Act's proscription on involvement by school employees). Plaintiffs' Memorandum, at 32–33. Mrs. Safford cannot be both a school employee and a non-school employee whenever it is convenient to Plaintiffs' position: she is either one or the other, and either way the act prohibits her involvement with the Gospel Choir.

■ As a matter of law, plaintiffs are incorrect in their interpretation that since Mrs. Safford's duties do not include supervisory, didactic, or authoritative duties over students, the Equal Access Act's ban on involvement by school officials does not apply. Plaintiffs' base their reasoning on a belief that the purpose of the act's prohibition of participation by a school employee in student religious activities is to prevent school students from feeling coerced into participating in religious activities due to the participation of an authority figure such as a teacher. Although this is certainly a purpose of the Act's proscription on employee participation in student religious meetings, the express language of the statute and the legislative history clearly supports an interpretation that *any school employee*, notwithstanding her duties, is prohibited from participating in these types of religious activities.[6]

Plaintiffs' suggestion that Mrs. Safford ceases to be a school employee within the meaning of the Act because her role as leader of the Gospel Choir is assumed after school hours, and is outside the scope of her employment as a school secretary, defies logic and flies in the face of the manifest purpose of the Equal Access Act. If an employee ceases to be an employee under the statute during non-instructional time, then there would be no purpose for the provisions set forth in § 4071(c) of the Act. Clearly, a school employee's participation in, or sponsorship of, a public school gospel choir during school hours would be a violation of the Establishment Clause. *Cf. School District of Abington Township v. Schempp*, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1962) (organized teacher-led Bible readings during classroom hours held to violate Establishment Clause).

Although the Equal Access Act does not define the term "employee", the definition which Plaintiffs urge the Court to accept, is not supported by the express language in the remainder of the Act; therefore, the term will be given its everyday meaning. Since the Equal Access Act clearly prohibits school employee participation and leadership in "extracurricular" student religious activities or organizations, it seems implicit that the legislators recognized that school employees remained as such during non-instructional or "extracurricular" hours.

Plaintiffs' complaint also alleges a § 1983 claim on the basis that the School District violated the Gospel Choir members' rights to freedom of speech and association guaranteed by the First Amendment. Plaintiffs presented no evidence, however, which would permit a reasonable jury to

---

**6.** The Congressional Debates make clear that the legislature intended that all school employees be covered by the Equal Access Act. The following exchange between Senator Gorton and Senator Hatfield (one of the sponsors of the Act) is illustrative:

MR. GORTON: [T]hose strictures will apply to all non-curriculum-related student activities which may use the open forum?
MR. HATFIELD: That is correct.
MR. GORTON: The reason for that, in religion at least, is that some of them will have teacher leadership and the relationship would be such that it might infringe on the establishment clause of the first amendment.
MR. HATFIELD: *Or to an employee of the school. It is not just a teacher. Teacher or employee.*
Cong.Rec. 19,223 (June 27, 1984) (emphasis added); *see also* Cong.Rec. 20,947 (July 25, 1984) ("[t]he proper separation of church and state is maintained by prohibiting *school employees* from promoting or taking part in the student

find in their favor.[7]

Accordingly, I conclude that Plaintiffs' present conduct causes the School District to violate the Equal Access Act, thus the School District's policies are measures intended merely to bring the Plaintiffs actions in accord with the Act.

### Plaintiffs' Civil Rights Claims

Plaintiffs have requested that this Court declare the School District's actions with regard to the Gospel Choir to be in violation of the Equal Protection Clause of the Constitution. Plaintiffs contend that the School District discriminated against the Gospel Choir on the basis of the race of the majority of its members.

Plaintiffs have offered no evidence to substantiate these claims. Moreover, the Court finds nothing in the record which would support such a claim. An identical complaint was filed with the United States Department of Education Office for Civil Rights, alleging the same equal protection violations against the Gospel Choir by the School District, and presenting the same facts presented to the Court in this case. The Office for Civil Rights determined that no discrimination had occurred. There being no evidence before me which suggests the contrary, I find that Plaintiffs have failed to meet their burden of showing an Equal Protection Violation on the part of the School District. Accordingly, summary judgment must be granted in favor of Defendant.

### Plaintiffs' Request for Equitable Relief

Plaintiffs' have sued in equity requesting a temporary restraining order, preliminary and permanent injunctive relief.

■ For the reasons discussed above, Plaintiffs' requests for injunctive relief must be denied, since the School District's actions, which Plaintiffs request to enjoin, were not in violation of any of the Gospel Choir members' constitutional rights, but were taken only to ensure compliance with the Equal Access Act. Moreover, it is well settled that in order to maintain a cause of action for injunctive relief, there must be a real threat of a future violation of one's legal rights, or a contemporary violation of a nature likely to continue to recur. *U.S. v. Oregon State Medical Soc'y,* 343 U.S. 326, 333, 72 S.Ct. 690, 695, 96 L.Ed. 978 (1952).

### Conclusion

The Equal Access Act is intended to enable all student groups to have equal access to secondary school premises, without regard to the subject of their activities, but that access is not unconditional. Rather, in opening the school doors to religious groups, the Act strikes the necessary balance between the Free Speech Clause and the Establishment Clause by strictly forbidding any element of school sponsorship.

The undisputed facts in this case demonstrate that the School District's actions were attempts to comply with the Equal Access Act. In fact, the School District is receptive to the Gospel Choir continuing to have access to Central High facilities provided that its purpose and conduct are in accord with the Equal Access Act. Defendant's Motion for Summary Judgment at 43.

Contrary to Plaintiffs' assertion, it is not unconstitutional for the School District to condition access to Central High on compliance with the Equal Access Act. *See generally Mergens,* 496 U.S. 226, 110 S.Ct. 2356.

As stated above, the material facts in this case are undisputed. Plaintiffs have offered no evidence that would support a finding contrary to Defendant's assertion that its actions with regard to the Gospel Choir were meant only to bring the Gospel Choir's conduct within the requirements of the Equal Access Act.

The Equal Access Act, as approved by the Supreme Court in *Mergens,* is clear and

---

meetings") (emphasis added) (statement of Representative Slattery).

7. *See Keenan v. City of Phila. et al.,* 983 F.2d 459, 466 (3d Cir.1992) for a discussion on the requirements to succeed on a § 1983 free speech or association claim.

unambiguous. No school employee may be present at religious meetings in a participatory capacity. 20 U.S.C. § 4071(c)(3). Additionally, no non-school persons may regularly attend religious meetings with students on the school premises. 20 U.S.C. § 4071(c)(5). If the Gospel Choir wishes to continue its activities without change, then they may do so away from Central High facilities; however, if the Gospel Choir wishes to continue its activities while continuing to have access to Central High facilities, then it must do so in accord with the Equal Access Act, which requires School District compliance.

An appropriate order and judgment follow.

### ORDER

AND NOW, this 30th day of December, 1992, upon consideration of Plaintiffs' Motion for Summary Judgment and the response thereto, and Defendant's Motion for Summary Judgment and the response thereto, it is hereby, ORDERED and DECREED that summary judgment is GRANTED in favor of Defendant and against Plaintiffs on the complaint and the counterclaim.

With respect to Defendant's counterclaim, it is hereby DECLARED that the School District of Philadelphia's actions with respect to the Central High School Gospel Choir are consistent with the requirements of the Equal Access Act.[1]

### JUDGMENT

AND NOW, this 30th day of December, 1992, it is ORDERED and ADJUDGED that Judgment is entered in favor of the Defendant and against Plaintiff; it is further ORDERED and DECLARED that Defendant, The School District of Philadelphia, with respect to its actions regarding the Central High School Gospel Choir, has acted consistently with the requirements of the Equal Access Act, 42 U.S.C. 4071 *et seq.*

---

1. Codified at 42 U.S.C. § 4071 *et seq.*