900 F.Supp. 254 (1995)
Rachel BAUCHMAN, By and Through her parent and guardian Cheryl BAUCHMAN, Plaintiff,
v.
WEST HIGH SCHOOL; Salt Lake City School District; William Boston; Gene Bonella; Teresa Piele; Dolores Riley; Darline Robles; Dale Manning; and Mary Jo Rasmussen, Defendants,
Liela Quinones Barela, By and Through her father, Luke J. Barela; Luke J. Barela in his own capacity; Tamra M. Badger, By and Through her parent and guardian, William A. Badger; William A. Badger in his own capacity; Cindy R. Badger; Eric Michael Nielsen, By and Through his parent and guardian Greg Nielsen; Greg Nielsen in his own capacity; Jo Rita Nielsen; Heather Pettit, By and Through her parent and guardian, Ralph Pettit; Ralph Pettit in his own capacity; Elaine Pettit; Joy M. Warthen, By and Through her parent and guardian, Lee Warthen; Alexander B. Warthen, By and Through his parent and guardian, Lee Warthen; Lee Warthen in his own capacity; Barbara Warthen; Steven C. Eror, Jr., By and Through his parent and guardian, Steven C. Eror; Steven C. Eror in his own capacity; Judy H. Eror; Jane Curtis, By and Through her parent and guardian, Marvin R. Curtis, Jr.; Marvin R. Curtis in his own capacity; and Joan C. Curtis, Defendant Intervenors.
Civ. No. 95-C-506G.
United States District Court, D. Utah, Central Division.
September 13, 1995.
*255 *256 *257 *258 *259 Andrew C. Hruska, Sullivan & Cromwell, New York City, Ross C. Anderson, Anderson & Karrenberg, Salt Lake City, UT, Lisa H. Thuran, New York City, for plaintiff.
John Robson, Fabian & Clendenin, Salt Lake City, UT.
Dan R. Larsen, Utah Attorney General, Salt Lake City, UT, for defendants.
Mark Ward, Utah Attorney General, Salt Lake City, UT, for Richard Torgerson.
James W. McConkie, III, Richard B. McKeown, Parker, McKeown & McConkie, Salt Lake City, UT, Kevin J. Hasson, Nancy E. Smith, Becket Fund for Religious Liberty, Washington, DC, for defendant-intervenors.

MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
J. THOMAS GREENE, District Judge.
This matter is before the court on separate motions to dismiss by Defendant Richard Torgerson and by the remaining defendants, and on Plaintiff's Motion for Leave to Submit a Supplemental Pleading. Plaintiff is represented by Ross Anderson,[1] Andrew C. Hruska, and Lisa H. Thurau. Defendant Richard Torgerson is represented by Mark Ward of the Utah Attorney General's Office. The remaining defendants are represented by Dan R. Larsen of the Utah Attorney General's Office. Defendant-Intervenors are represented by Kevin J. Hasson and Nancy E. Smith of the Beckett Fund for Religious Liberty, and James W. McConkie and Richard B. McKeown of Parker, McKeown & McConkie.
A hearing was held on the pending motions on August 28, 1995, following which the matter was taken under advisement. After due consideration of the issues presented, this court renders its memorandum decision and order.

STANDARD OF REVIEW
In considering a motion to dismiss under Rule 12(b)(6), the court looks only to the complaint and construes it in the light most favorable to the plaintiff, assuming all allegations to be true. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Only well-pleaded facts, as distinguished from conclusory allegations, must be taken as true. Dunn v. White, 880 F.2d 1188, 1190 (10th Cir.1989), cert. denied, 493 U.S. 1059, 110 S.Ct. 871, 107 L.Ed.2d 954 (1990); Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir.1984); Mitchell v. King, 537 F.2d 385 (10th Cir.1976). In determining whether to grant a motion to dismiss, courts look solely to the material allegations of the complaint. Ash Creek Mining Co. v. Lujan, 969 F.2d 868, 870 (10th Cir.1992). A motion to dismiss will not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957).

BACKGROUND  PLAINTIFF'S MATERIAL ALLEGATIONS OF FACT[2]
Plaintiff Rachel Bauchman is a Jewish student enrolled at Defendant West High School, a public secondary school within the Defendant Salt Lake City School District. At times relevant in the complaint, during *260 the 1994-95 school year, plaintiff was enrolled in the tenth grade as a sophomore. Plaintiff was a member of West High School's A'Cappella Choir, an elective class offered for credit. Admittance to the choir is by audition, which plaintiff successfully accomplished.
Defendant Richard Torgerson ("Torgerson") is the choir instructor at West High School, and in that position is an employee of Defendant Salt Lake City School District. Defendant William Boston is the principal of West High School, and Defendants Gene Bonella and Teresa Piele are assistant principals. Defendant Dolores Riley is the School District's Minority Liaison Coordinator. Defendant Darline Robles has been the School District's superintendent since January 1995. Defendant Dale Manning was the School District's interim acting superintendent from August 1994 until January 1995. Defendant Mary Jo Rasmussen is the President of the Salt Lake City School Board.
During the time that plaintiff has been a member of the A'Cappella Choir, Torgerson has selected some songs of an explicitly religious derivation for performance by the choir. The lyrics of such songs might language such as, "We glorify Thee God of Hosts. We love Thee and exalt Thee," and praise for Jesus Christ. Practice and performance of these songs was part of the required curriculum of the West High School A'Cappella Choir class. The works of contemporary Christian songwriters constituted a preponderance of the choir's musical curriculum. Torgerson required plaintiff, as well as other choir members, to perform in public such songs of a religious character in connection with the choir's activities.
Torgerson also has required plaintiff and other choir members to perform at religious sites as part of the choir's regular curriculum. For some performances, Torgerson selected explicitly Christian religious sites, such as The Church of the Madeleine (Roman Catholic), the First Presbyterian Church, and Temple Square (The Church of Jesus Christ of Latter-Day Saints). Present at some of these sites were items of religious significance, such as replicas of a cross. Performance at these sites was in conjunction with a "Christmas Concerts" program that was part of the regular curriculum of the West High A'Cappella Choir class.
In response to complaints by plaintiff and her parents, Torgerson refused to alter the choir class curriculum, or to change the sites for performance. Defendant Boston supported Torgerson in the face of opposition to the curriculum by the Bauchman family. Torgerson personally spoke to plaintiff about the matter, and gave her the choice of either (1) continuing to participate in the choir's scheduled performances and curriculum, or (2) voluntarily resigning from participation in the choir for the period of the Christmas Concerts program, with the entry of an automatic "A" grade and an "Honors" citizenship mark for choir class on her high school transcript.[3]
In the past, the West High School A'Cappella Choir has organized and sponsored a tour in the spring ("Spring Tour"). The Spring Tours have routinely included performances at some religious sites, performance of religious and devotional music, and attendance at Christian religious services in which choir class members participate. During class periods, Torgerson expressly criticized and blamed plaintiff's opposition to the religious music component of the choir's curriculum, and impliedly blamed her opposition as having caused the cancellation of the 1995 Spring Tour. In addition, plaintiff asserts that at several times during the 1994-1995 school year, Torgerson took occasion during class lecture periods to criticize plaintiff both specifically and inferentially in front of her choir classmates for the assertion of her constitutional claims. Plaintiff also asserts that in front of the choir class, Torgerson mentioned that plaintiff was Jewish, in such a way as to emphasize the distinction of her *261 beliefs from those of the Christian majority of the other choir students. Plaintiff claims that by these actions, Torgerson intended to promote hostility and ridicule toward her by her classmates for her religious beliefs and for the assertion of her constitutional rights. Plaintiff also claims that following the lectures, she was subjected to public ridicule and humiliation, and was the subject of racial and religious epithets spoken by her fellow students.
Plaintiff learned that Torgerson covertly planned a secret tour to take the place of the canceled Spring Tour. She claims that the planning took place on West High School property and under the guise of a Boy Scout activity. When plaintiff inquired of Torgerson on this matter, she says that she was rebuffed and was unable to obtain further information.
Upon receipt of a letter from plaintiff's father, Eric Bauchman, detailing plaintiff's constitutional claims, Torgerson forwarded the letter to Preston Naylor, the father of another member of the choir. Torgerson's purpose in forwarding the letter was to assist Mr. Naylor in publicizing the letter and the Bauchman's views, allegedly in order to engender hostility against plaintiff. The private letter from Mr. Bauchman was, in fact, publicly distributed as an attachment to a letter from Mr. Naylor to choir students' parents that criticized plaintiff and her parents for asserting plaintiff's constitutional claims. Plaintiff asserts that distribution of Mr. Bauchman's letter resulted in her being subjected to public humiliation and hostility.
Plaintiff claims that defendants have not discontinued or changed the policies and practices which plaintiff alleges to be in violation of her constitutional rights, despite objections by plaintiff and her parents. Indeed, during classroom lectures, Torgerson stated that he would not cease the allegedly unconstitutional activities "no matter what." Plaintiff alleges that defendants intentionally dealt with plaintiff's constitutional concerns in such a way as to engender hostility against plaintiff and to create an environment of ridicule and humiliation.[4]
As part of the choir's required curriculum, Torgerson and West High School scheduled the A'Cappella Choir to sing two songs during the graduation ceremony: "Friends" and "The Lord Bless You and Keep You." These songs contain lyrics which refer specifically to "the Lord," and contain other language of a religious nature. The song "Friends" was written and arranged by a contemporary Christian author. The song "The Lord Bless You and Keep You" quotes Jewish Old Testament scripture, but was arranged by a contemporaneous Christian author and is often sung by Christians. These two songs were the only two songs scheduled for performance at the graduation ceremony. On June 2, 1995, this court denied plaintiff's motion for a temporary restraining order concerning intended sing of these songs,[5] but on June 6, 1995, the United States Court of Appeals for the Tenth Circuit issued an injunction pending appeal, which enjoined the A'Cappella Choir from the performance at graduation of the two scheduled songs.[6]
The following allegations are contained in a Supplemental Pleading which plaintiff tendered to the court. This court deemed the *262 pleading to be filed for purposes of consideration of the motions to dismiss now being addressed. The court has since learned that the Supplemental Pleading has been submitted to the Tenth Circuit in support of a petition by plaintiff for adjudication in civil contempt.[7]
On June 7, 1995, the date of graduation, the choir class met for rehearsal. Torgerson conducted the rehearsal, but did not discuss the injunction issued by the Tenth Circuit. Several members of the choir class known to plaintiff spoke openly of their intention to perform the song "Friends" at graduation, but Torgerson took no action to prevent the performance of "Friends" despite the openly expressed intent of several students to do so. Principal Boston asked the choir class not to disrupt the graduation, but the choir class was not expressly warned to refrain from violating the injunction.
Laurie Hargraves, not a defendant in this matter but an employee and official of West High School, was explicitly warned of some students' intention to sing "Friends" but took no action to prevent such singing. Defendants were aware or willfully remained unaware of the distribution of copies of the "Friends" sheet music to members of the graduation audience, including to West High School officials and personnel.
The A'Cappella Choir performed two songs at graduation, following which Torgerson left the stage with his hands in the air and without directing the choir to take their seats, which is customary at the conclusion of a performance. As Torgerson left the stage, a student who was not a choir member approached the podium and declared that the choir would sing "Friends." At the same time, Ms. Hargraves warned a student who approached the piano not to aid in the singing. Boston rose to retrieve the microphone from the student, and requested that "Friends" not be sung. When the singing continued, Boston returned to his seat. Many members of the audience arose and participated in the singing of "Friends." Plaintiff says that she left the auditorium in tears.
Plaintiff alleges that defendants knew or should have known of the impending events that led to the singing of "Friends" and yet declined to prevent such events. Further, plaintiff claims that defendants took insufficient action to stop the singing of "Friends" while it occurred, and did not adequately reprimand or discipline the students and others under their authority that assisted in the singing of "Friends."[8]

ANALYSIS
Based on the foregoing allegations of fact, plaintiff asserts nine claims which can be divided into four categories. First, plaintiff brings direct claims under the First Amendment of violation of her rights under the Establishment Clause, the Free Exercise Clause, and the Free Speech provisions. Second, plaintiff brings claims pursuant to 42 U.S.C. § 1983 for violation of the same First Amendment rights as set forth in the first category. Third, plaintiff asserts that defendants have violated her rights under the Religious Freedom and Restoration Act, 42 U.S.C. § 2000bb. Fourth, plaintiff claims that her rights under the Utah State Constitution have been violated with respect to the state constitution Establishment Clause, Free Exercise Clause, Free Speech provisions, and provisions concerning Nonsectarian Schools. Based on these claims, plaintiff requests declaratory relief, injunctive relief, a court order mandating defendants' compliance with federal and state constitutions, a court order mandating discipline against Torgerson, compensatory damages, punitive damages, and attorneys' fees.

*263 I. DIRECT CLAIMS UNDER THE UNITED STATES CONSTITUTION.
The Supreme Court has held that direct causes of action under the United States Constitution may be brought against federal officials. Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). However, direct actions under the Constitution against state officials are not appropriate. By enacting 42 U.S.C. § 1983, "Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective ..." Carlson v. Green, 446 U.S. 14, 18-19, 100 S.Ct. 1468, 1471-72, 64 L.Ed.2d 15 (1980) (emphasis in original). See also Williams v. Bennett, 689 F.2d 1370, 1390 (11th Cir.1982), cert. denied, 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983).
In addition to bringing direct causes of action under the federal constitution, plaintiff has claimed violation of the same constitutional provisions pursuant to 42 U.S.C. § 1983. As stated by the Sixth Circuit Court of Appeals, "[t]he Supreme Court has never recognized a [direct constitutional] cause of action where § 1983 was available as a remedy." Thomas v. Shipka, 818 F.2d 496, 500 (6th Cir.1987), judgment vacated on other grounds, 488 U.S. 1036, 109 S.Ct. 859, 102 L.Ed.2d 984 (1989). Consequently, plaintiff's direct claims under the federal constitution must be dismissed.

II. CLAIMS UNDER § 1983.

A. Proper Defendants Under § 1983.
As an initial matter, this court must determine which of the defendants are subject to suit under § 1983. Plaintiff's complaint asserts each cause of action against every defendant.

1. Defendants Salt Lake City School District and West High School.
42 U.S.C. § 1983 permits suits against any
person who, under color of statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the constitution ...
In Monell v. New York City Dept. of Soc. Serv., 436 U.S. 658, 690, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978), the Supreme Court held that "the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress did intend ... local government units to be included among those persons to whom § 1983 applies." Consequently, local government units "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief ..." Id. However, the Court limited the scope of such actions to governmental units that are not part of the state for purposes of Eleventh Amendment immunity. Id. at 690 n. 54, 98 S.Ct. at 2035 n. 54. In Hess v. Port Authority Trans-Hudson, ___ U.S. ___, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994), the Supreme Court squarely ruled that city and county governments are not part of a state, and do not have Eleventh Amendment immunity. The Tenth Circuit has held that Utah school districts "are not arms of the state for purposes of the Eleventh Amendment." Ambus v. Granite Bd. of Educ., 995 F.2d 992, 997 (10th Cir.1993). Defendants do not assert that the Salt Lake City School District is entitled to Eleventh Amendment immunity.
As for West High School, plaintiff asserts that it is a "recognizable entity for suit under § 1983, as it is well within the meaning of a `person' to which the statute is intended to apply." Pl.'s Resp.Mem., at 28. This court disagrees. Utah law provides that school districts may establish, purchase, sell, construct, repair and improve individual schools. Utah Code Ann. § 53A-3-402(2), (4). Moreover, only a local board of education has power to sue, be sued, or otherwise act as representative of a local school district and its component schools. Utah Code Ann. § 53A-3-401(1). The structure of the Utah education system confers no independent legal existence on individual schools. Individual schools are merely inseparable parts of the school districts.
Courts have routinely dismissed § 1983 claims brought against legally non-independent units of government entities otherwise subject to suit under § 1983. See Martinez *264 v. Winner, 771 F.2d 424, 444 (10th Cir.1985) (dismissing § 1983 claims against City of Denver Police Department because department was not a suable entity separate from the city itself), remanded to consider mootness, 475 U.S. 1138, 106 S.Ct. 1787, 90 L.Ed.2d 333 (1986), on remand, 800 F.2d 230 (10th Cir.1986); Stump v. Gates, 777 F.Supp. 808, 815-16 (D.Colo.1991), aff'd, 986 F.2d 1429 (10th Cir.1993). Cf. Brandon v. Holt, 469 U.S. 464, 472 and n. 21, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). Since West High School has no status independent of the school district, it cannot be separately liable under § 1983, and any claim against it would simply be redundant. Therefore, this court dismisses West High as a defendant with respect to plaintiff's § 1983 claims.[9]

2. Individual Defendants.
Among the named defendants are Richard Torgerson, the principal and assistant principals of West High School, officials of the Salt Lake City School District, and the President of the School Board.

a. Supervisory Liability  "Affirmative Link."
The complaint states that Torgerson selected explicitly Christian religious music for the choir's repertoire, arranged for some performances at religious sites, and required performance of explicitly religious music. Assuming for purposes of this analysis, without deciding, that the allegations of plaintiff state a constitutional claim against Defendant Torgerson, in order for the other individual defendants to be held liable under § 1983, it must be alleged and proven that an "affirmative link" existed between those defendants and the actual alleged tortfeasor, Torgerson. See Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Plaintiff asserts that the other defendants are liable under a theory of supervisory liability. In this regard, plaintiff argues that these defendants were under an affirmative duty to prevent Torgerson's alleged constitutional violations.
The Tenth Circuit has stated that "[a] supervisor is not liable under section 1983 unless an `affirmative link' exists between the [constitutional] deprivation and either the supervisor's `personal participation, his exercise of control or direction, or his failure to supervise.'" Meade v. Grubbs, 841 F.2d 1512, 1527 (10th Cir.1988) (internal citations omitted). Moreover, "[l]iability under 1983 must be predicated on a `deliberate' deprivation of constitutional rights by the defendant, and not on negligence." Jojola v. Chavez, 55 F.3d 488, 490 (10th Cir.1995) (internal quotes omitted). See also City of Canton v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). In order to show the type of deliberate indifference necessary to support a § 1983 claim against these defendants, plaintiff must allege that the defendants had actual or constructive knowledge of the alleged unconstitutional misconduct which triggered an official duty to intervene in preventing such misconduct. Jojola, 55 F.3d at 490.
Plaintiff's complaint generally asserts that "the defendants have ignored [the Bauchmans] objections just as they have ignored the dictates of the federal and state constitutions and the statutes promulgated thereunder." Compl. at ¶ 44. The complaint does not distinguish between the defendants, whose positions and levels of apparent responsibility vary greatly.[10] Nor does the *265 complaint allege what objections were ignored or when they were ignored. Moreover, the complaint does not allege any specific connection between the actions or inactions of any or all of the defendants and the alleged unconstitutional conduct by Torgerson. Accordingly, this court rules that the facts as pleaded, as distinguished from conclusory allegations, do not state a cause of action against any of the individual defendants except perhaps Defendant Torgerson.

b. Qualified Immunity.
Defendants including Torgerson claim that they should be held to be immune under the doctrine of qualified immunity. Public employees are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1981). If clearly established rights are not implicated, "the public interest may be better served by action taken `with independence and without fear of consequences.'" Id. at 819 (quoting Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 1217-18, 18 L.Ed.2d 288 (1967)).
When the issue of qualified immunity is raised, the Tenth Circuit requires "the plaintiff [to be] held to a heightened standard of pleading. The complaint must include `all the factual allegations necessary to sustain a conclusion that defendant violated clearly established law.'" Sawyer v. County of Creek, 908 F.2d 663, 667 (10th Cir.1990) (quoting Pueblo Neighborhood Health Centers, Inc. v. Losavio, 847 F.2d 642, 646 (10th Cir.1988)). Plaintiff argues that the heightened pleading standard was overruled by the Supreme Court in Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). In that case, the Court held that a federal court may not apply a heightened pleading standard to a complaint asserting municipal liability under § 1983. However, the Court expressly declined to decide whether federal courts may apply a heightened pleading standard where qualified immunity is at issue. Id., at ___, 113 S.Ct. at 1162. See also Branch v. Tunnell, 14 F.3d 449, 451 (9th Cir.1994), cert. denied, ___ U.S. ___, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994). Therefore, this court continues to be bound by the rules set forth by the Tenth Circuit requiring the application of a heightened pleading standard.
Plaintiff's complaint contains no factual allegations that would indicate behavior in contradiction to clearly established law. In order for federal constitutional law to be clearly established in this circuit, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir.1992). None of the cases cited by plaintiff in her memorandum demonstrate that First Amendment law concerning school curriculum or religious music was clearly established during the 1994-95 school year. Moreover, Justices of the Supreme Court have remarked on the confusion surrounding the proper interpretation of the Establishment Clause. See Rosenberger v. Rector, ___ U.S. ___, ___, 115 S.Ct. 2510, 2532, 132 L.Ed.2d 700 (U.S., 1995) (Thomas, J., concurring) ("[O]ur Establishment Clause jurisprudence is in hopeless disarray."); Lynch v. Donnelly, 465 U.S. 668, 688-89, 104 S.Ct. 1355, 1367, 79 L.Ed.2d 604 (1984) (O'Connor, J., concurring) ("It has never been entirely clear ... how the three parts of the [Lemon] test relate to the principles enshrined in the Establishment Clause.").
Based upon the foregoing, this court holds that all of the individual defendants are immune from liability for damages under the doctrine of qualified immunity.[11]

*266 B. Constitutional Analysis.
The crux of plaintiff's constitutional claims is the alleged unconstitutionality of the selection and required performance, often at locales of some religious significance, of a substantial amount of Christian devotional music by the West High School's A'Cappella Choir. Plaintiff claims that the facts alleged in the complaint, taken as true, show a violation of her First Amendment constitutional rights under the Establishment Clause, the Free Exercise Clause, and the Free Speech Clause.[12] The argument presented in plaintiff's legal memorandum that Torgerson selected devotional music with intent to indoctrinate is not supported in the pleading.[13] Also, the pleading sets forth grievances which may be actionable in another forum but which do not rise to the level of *267 constitutional claims.[14]
This court will now discuss plaintiff's constitutional claims which, among other things, attack inclusion in the curriculum and repertoire of explicitly religious music and performance of such by the choir at religious sites. The two specific songs which were scheduled to be sung at West High School and this court's prior bench ruling relating thereto are not ruled upon in this opinion since the Tenth Circuit has retained jurisdiction over those matters.[15]

1. Establishment Clause.
The Supreme Court set forth the test for challenges to state action under the Establishment Clause in Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). Under Lemon, "a government practice must (1) reflect a clearly secular purpose; (2) have a primary effect that neither advances nor inhibits religion; and (3) avoid excessive government entanglement with religion." Id., 403 U.S. at 612-613, 91 S.Ct. at 2111.
Plaintiff argues that several Supreme Court cases compel the conclusion in this case that Torgerson's actions were violative of the Establishment Clause. See Lee v. Weisman, 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992) (prohibiting nondenominational graduation prayer); School District of Abington Township v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963) (finding mandatory Bible reading and recitation of the Lord's Prayer in public schools to be violative of the Establishment Clause); Engel v. Vitale, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962) (finding daily classroom prayers unconstitutional). Specifically, plaintiff contends that the musical curriculum and performance sites selected by Torgerson present a similar question to the one confronted by the Supreme Court in Lee v. Weisman. In Lee, the Court declared unconstitutional under the Establishment Clause a public middle school's non-denominational graduation prayer, offered by a Rabbi, which included expressions of gratitude to "God" and the "Lord," but made no specific reference to any particular religion. 505 U.S. at 581-82, 112 S.Ct. at 2652-53.
Plaintiff further argues that the selection and performance of explicitly Christian religious music does not reflect a secular purpose because the lyrics are "invocation[s] of God's blessings," Engel, 370 U.S. at 424, 82 S.Ct. at 1264, and that taken as a whole the songs are therefore religious activities, effectively the same as prayer. In this regard, plaintiff argues that the religious songs in the A'Cappella Choir's repertoire advance religion in the same fashion as the graduation prayer in Lee v. Weisman. Therefore, plaintiff asserts that the performance of the songs is a religious exercise and advances religion. Further, plaintiff argues that the selection and performance of the songs results in excessive *268 entanglement because the state is participating in the affairs of religion. See Everson v. Bd. of Educ. of Ewing, 330 U.S. 1, 16, 67 S.Ct. 504, 511-12, 91 L.Ed. 711 (1947).
Neither the Supreme Court nor the Tenth Circuit have had occasion to determine whether choral singing of music of a religious nature would constitute a prayer, or other activity, which would implicate the Establishment Clause. Singing of songs is not an "explicit religious exercise," like the graduation prayer was deemed to be by the Supreme Court in Lee v. Weisman, or like other prayers and singing in cases cited by plaintiff.[16] Music has a purpose in education beyond the mere words or notes in conveying a feeling or mood, teaching culture and history, and broadening understanding of art. In this regard, A'Cappella singing often contains religious sentiment.[17] Despite reference in some songs to "God" and the "Lord," as well as language in the songs reflecting a supplication to deity, the songs with religious content are not ipso facto the equivalent of prayers. Neither does the fact that the lyrical source of some songs is scriptural automatically render those songs violative of the Establishment Clause.[18]
As plaintiff alleges, the songs in question and the locales for performance are part of the regular curriculum of the West High School A'Cappella Choir. The Eighth Circuit has considered the application of the Lemon test to school curriculum and programs. Florey v. Sioux Falls School District, 619 F.2d 1311 (8th Cir.1980), cert. denied, 449 U.S. 987, 101 S.Ct. 409, 66 L.Ed.2d 251 (1980). In Florey, the court decided whether a public school policy allowing the observance at school of holidays that had both a secular and religious basis, including the performance of Christmas musical programs, satisfied the requirements of the Lemon test. In that case, the court found the school policy primarily to further a secular purpose of educating children concerning culture, tradition, and heritage. The court also found that the principal effect of the rules concerning observance of holidays was to teach students about the customs and heritage of the United States and other countries, and not to teach religion. Finally, the court held that the extent of religious content in curriculum is a factor that inheres in every choice of education materials and is unavoidable, and found that entanglement was not excessive. The three prongs of Lemon will now be discussed as related to the allegations of plaintiff in this case.

a. Secular Purpose.
In the case at bar, assuming plaintiff's allegations to be true, Torgerson's selection *269 of the musical curriculum, including songs of an explicitly religious character, and the selection of explicitly religious sites for some performances, appears to have a primarily secular purpose  to teach musical appreciation, to broaden the students' understanding of musical culture, and to increase the students' awareness of culture and diversity. Plaintiff's unilateral and conclusory allegation that Torgerson's selection of these songs was for the purpose of conveying a religious message is not supported by allegations of material fact. "Public schools are not required to delete from the curriculum all materials that may offend any religious sensibility." Florey, 619 F.2d at 1318. Indeed, the Supreme Court has stated that the study of religion is not forbidden "when presented objectively as part of a secular program of education." Schempp, 374 U.S. at 225, 83 S.Ct. at 1573.

b. Primary Effect.
As for the primary effect of the songs selected for the curriculum, "the First Amendment does not forbid all mention of religion in public schools; it is the advancement or inhibition of religion that is prohibited." Committee for Public Education v. Nyquist, 413 U.S. 756, 788, 93 S.Ct. 2955, 2973, 37 L.Ed.2d 948 (1973) ((cited in Florey, 619 F.2d at 1315) (emphasis in original)). Further, the Lemon test "permits a given activity if `its principal or primary effect [is] one that neither advances or inhibits religion.'" Florey, 619 F.2d at 1317 (quoting Lemon, 403 U.S. at 612, 91 S.Ct. at 2111) (emphasis in original). Plaintiff's complaint contains no factual allegations that would support a determination that the principal or primary effect of the musical curriculum of the A'Cappella choir, presented as a regular part of a secular program of education, is to advance or promote religion rather than to increase appreciation of music and culture, and to teach musical skills.[19]

c. Excessive Entanglement.
Finally, plaintiff has failed to allege facts sufficient to demonstrate an excessive entanglement by the state with religion. Any selection of choral music for use by a public school will inevitably entail some involvement with religion due to the nature of choral music. The mere fact that a teacher must choose from religious and non-religious materials, and chooses some or most with religious components for obviously secular reasons, does not constitute excessive entanglement under the Lemon test. See Florey, 619 F.2d at 1318.
Based on the foregoing, this court finds that the selection of "explicitly Christian religious" music for inclusion in the West High A'Cappella Choir's repertoire and the performance of that music, often at "explicitly religious" sites, does not constitute a violation of the Establishment Clause under the facts alleged in plaintiff's complaint.[20]

2. Free Exercise Clause.
The Free Exercise Clause recognizes the right of every person to be free from state compulsion either to do an act that is prohibited by that person's religious belief or to modify his or her behavior in violation of religious belief. See Hobbie v. Unemployment App. Comm. of Florida, 480 U.S. 136, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987); Thomas v. Review Bd., 450 U.S. 707, *270 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981). In this case, plaintiff claims that Torgerson's actions have prevented her "from freely exercising her own religion by compelling her to participate in religious exercises of a religion different from her own in violation of the First Amendment ..." Compl. at ¶ 57. This court does not perceive that the songs of a religious nature in the West High A'Cappella Choir's repertoire are a burden on the exercise of Judaism by plaintiff. However, the Supreme Court has cautioned that "[c]ourts are not arbiters of scriptural interpretation" or of the mandates of any religion, Thomas, 450 U.S. at 715-716, 101 S.Ct. at 1430-31, and this court does not attempt to refute plaintiff's claim that the songs are offensive to her religious beliefs.
Offense to plaintiff's religious sensibilities does not automatically render the inclusion in the choir's performance repertoire of religious songs as violative of plaintiff's free exercise rights. In order to state a claim, plaintiff must allege facts that, if true, would demonstrate a state compulsion to act in such a way as to trample plaintiff's religious beliefs or non-beliefs. Plaintiff's complaint does not include such factual allegations. Indeed, her allegations of Torgerson's proposal that plaintiff be excused from the practice and performance of any songs she found offensive compels the contrary conclusion. Based on the plaintiff's allegations, it appears that the burden on plaintiff's free exercise was minimal in this case and that no state coercion existed. Plaintiff was expressly permitted to avoid classroom practice and performance of religious songs to which she objected. See Compl. at ¶ 30. Similar excusals from objectionable activities have been held by other courts to satisfy the requirements of the Free Exercise Clause. See Grove v. Mead Sch. Dist. No. 354, 753 F.2d 1528, 1533 (9th Cir.1985), cert. denied, 474 U.S. 826, 106 S.Ct. 85, 88 L.Ed.2d 70 (1985); Florey, 619 F.2d at 1318.[21]
The state has an interest in providing a well-rounded musical education to students in the choir class, which would include songs of an explicitly religious derivation. Compliance with plaintiff's insistence that those songs which violate her religious beliefs be removed from the curriculum would critically impede the state's educational objectives.[22] As stated by the court in Florey,
If we are to eliminate everything that is objectionable to any [religious person or group] or inconsistent with any of their doctrines, we will leave public education in shreds.
619 F.2d at 1318 (citing McCollum v. Bd. of Educ., 333 U.S. 203, 235, 68 S.Ct. 461, 477, 92 L.Ed. 649 (1948) (Jackson, J., concurring)). Therefore, this court holds that plaintiff's complaint fails to state a claim for relief under the Free Exercise Clause.

3. Free Speech.
The Supreme Court has clearly stated that the First Amendment protects the right to speak freely and the right to refrain from speaking. See, e.g., Wooley v. Maynard, 430 U.S. 705, 714, 97 S.Ct. 1428, 1435, 51 L.Ed.2d 752 (1977). Therefore, the state is prohibited from compelling speech. *271 For the reasons discussed above concerning plaintiff's free exercise rights, however, no state compulsion of speech exists in this case under the facts alleged in plaintiff's complaint.

III. CLAIM UNDER THE RELIGIOUS FREEDOM AND RESTORATION ACT.
The Religious Freedom and Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1, requires that government "shall not burden a person's exercise of religion" unless such burden is pursuant to a compelling government interest and by the least restrictive means. The burden on religion must be more than merely offensive, and must arise from state compulsion or coercion that puts substantial pressure on a religious adherent to deny his or her own religion or practice tenets of another set of beliefs. See Werner v. McCotter, 49 F.3d 1476, 1480 (10th Cir. 1995) (applying similar principles in the negative context, i.e., state compulsion not to practice religious belief by state's refusal to provide facilities to prisoner), cert. denied, Thomas v. McCotter, ___ U.S. ___, 115 S.Ct. 2625, 132 L.Ed.2d 866 (1995); Fleischfresser v. Directors of Sch. Dist. 200, 15 F.3d 680, 689-90 (7th Cir.1994) (applying similar principles in a free exercise context). As discussed above, plaintiff in the instant case was permitted to be excused from any choir activities which she found to offend her religious beliefs. She declined this option, and instead continued to participate in practicing and performing all of the songs in the choir's repertoire, including those which were explicitly Christian religious in nature. In light of the lack of alleged facts demonstrating state coercion in this matter, this court finds that plaintiff has failed to state a claim that her religious beliefs were substantially burdened in violation of RFRA.

IV. CLAIMS UNDER THE UTAH STATE CONSTITUTION.
Plaintiff asserts claims pursuant to the Establishment Clause, Free Exercise Clause, Free Speech provisions, and the provisions pertaining to Nonsectarian Schools, all under the Utah Constitution.
There appears to be no direct statutory or common law private cause of action for violation of the non-self-executing provisions of the Utah State Constitution.[23]See Sauers v. Salt Lake County, 735 F.Supp. 381, 386 (D.Ut.1990); Condemarin v. University Hospital, 775 P.2d 348 (Utah 1989) (Hall, J., dissenting); Brown v. Wightman, 47 Utah 31, 151 P. 366 (Utah 1915). The sections of the state constitution of which plaintiff claims a violation are not self-executing and contain no provisions or mechanism for a court action or remedy.
The Utah Supreme Court entertained a private cause of action based upon the Establishment Clause, Article I, Section 4, of the Utah Constitution in Society of Separationists v. Whitehead, 870 P.2d 916 (Utah 1993), in order to review a formal written policy of the Salt Lake City Council regarding ceremonial legislative prayer. In the case at bar, plaintiff does not challenge a formal policy of the School District, or of the individual named defendants. Rather, she challenges the selection of explicitly religious music by Torgerson, and its performance, sometimes at religious sites. This court opines and holds that direct actions based on these allegations under non-self-executing provisions of the Utah Constitution may not be asserted under Utah law.[24]
For the reasons discussed above, plaintiff's claims must be dismissed. Since the actions and policies of defendants of which plaintiff complains are not legally improper under any *272 of the theories asserted by plaintiff, plaintiff's requests for relief in the form of declaratory relief, injunctive relief, and compensatory and punitive damages must likewise be denied.
Based on the foregoing, it is hereby
ORDERED, Defendant Richard Torgerson's Motion to Dismiss is GRANTED; it is further
ORDERED, the remaining Defendants' Motion to Dismiss is GRANTED.
NOTES
[1] Ross Anderson was substituted as local counsel for plaintiff replacing H. Thomas Stevenson because of a conflict of interest.
[2] In accordance with the applicable standard of review, the court must assume plaintiff's allegations of fact to be true. Therefore, the court herein sets forth the facts of this case as pleaded by the plaintiff in her complaint even though some of the allegations are controverted.
[3] In her complaint, plaintiff alleges that both of these choices were "constitutionally infirm." This allegation is not one of material fact, but is rather a conclusion of law on a matter which must be ultimately determined by the courts. As a conclusory allegation, it is not accorded deference under the standard of review applicable to a motion to dismiss. See Swanson, 750 F.2d at 813.
[4] Plaintiff's complaint generally refers to a course of action pursued by "defendants," but alleges no specific facts concerning any defendants except Torgerson, Boston, and West High School. Indeed, within the section of plaintiff's complaint entitled "Factual Allegations," none of the other defendants are specifically mentioned. Nevertheless, plaintiff alleges that the factual allegations of the complaint demonstrate that the defendants collectively intended to incite public hostility against plaintiff. Moreover, plaintiff alleges that defendants' actions "demonstrate[] a commitment to continue their violations of plaintiff's constitutional rights and reflect complete indifference to mental and emotional distress that their conduct has caused plaintiff ..." Compl. at ¶ 49. These conclusory allegations are not entitled to the presumption of truth that is accorded to allegations of fact. See supra p. 259 and note 2.
[5] This court denied the motion in an oral bench ruling, reserving issuance of a written opinion. A nunc pro tunc memorandum further explaining this court's ruling has since been issued.
[6] The Tenth Circuit has retained jurisdiction over this court's bench ruling of June 2, 1995. Bauchman v. West High School, et al., No. 95-4084 (10th Cir. Aug. 18, 1995) (Order filed with this court on Aug. 23, 1995).
[7] Proceedings relative to the petition for civil contempt are ongoing and the Circuit Court has retained jurisdiction over that matter.
[8] Plaintiff fails to allege any facts regarding the knowledge or participation in these events of any of the defendants except Boston and Torgerson, but makes allegations of vicarious knowledge to other defendants based on their general affiliation to West High School and the School District. While the allegations concerning the sufficiency and adequacy of defendants' actions are conclusory in nature, the court includes them in the recitation of the factual background in order to show the grounds of the plaintiff's claims in this matter.
[9] Plaintiff argues that "[c]ourts often ascribe liability to individual schools sued under § 1983." Pl.'s Resp.Mem. at 28. In support of this assertion, plaintiff cites to Milonas v. Williams, 691 F.2d 931 (10th Cir.1982), cert. denied, 460 U.S. 1069, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983), a case appealed from this district court. However, Milonas does not support plaintiff's assertion. The school at issue in that case, the Provo Canyon School, was not a named defendant, and no discussion in the case was given to the issue of the application of § 1983 to a suit against the school itself. Plaintiff also cites to Taylor v. Maryland School for the Blind, 409 F.Supp. 148 (D.C.Md.1976). That case is inapposite to the issues in the case, however, because the Maryland school system at issue in that case may be markedly different in its makeup than the Utah school system, therefore warranting a different analysis. This court is unaware of any other case that would show that Utah schools are individually subject to suit under § 1983.
[10] Plaintiff does specifically refer to Defendant Boston, West High School's principal, but only to allege that "Boston supported defendant Torgerson," Compl. at ¶ 30, and that Boston met with the choir class before graduation, took the microphone away from the student that called for the singing of "Friends," and sat down when the singing continued after his request that it stop. V.Supp.Plead. at ¶¶ 2, 9. These allegations, taken as true, fail to show sufficient affirmative link of Boston to the alleged tortious acts of Torgerson.
[11] Because the court finds, infra, that the musical curriculum of the West High A'Cappella Choir is not unconstitutional, the selection and performance of such curriculum and acquiescence therein is not unconstitutional. Therefore, none of the individual defendants are liable for injunctive relief or damages.
[12] In her response to defendants' motions to dismiss, plaintiff argues that issuance of an emergency injunction pending appeal the Tenth Circuit Court of Appeals conclusively demonstrates that her complaint states a claim and that a Rule 12(b)(6) motion to dismiss may not be granted, asserting that the Tenth Circuit's decision on that matter was "a strong indication that plaintiff is entitled to the relief she seeks ..." Pl.'s Resp. Mem. at 10. This court disagrees with such a characterization.

Under the Tenth Circuit's standard for the issuance of an injunction, a plaintiff must prove the traditional elements: (1) the moving party will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs any damage to the opposing party; (3) the injunction, if issued, will not be adverse to the public interest; and (4) a substantial likelihood exists that the moving party will prevail on the merits. SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096, 1098 (10th Cir.1991); Seneca-Cayuga Tribe v. State ex rel. Thompson, 874 F.2d 709, 716 (10th Cir.1989). However, when the first three elements are satisfied, the Tenth Circuit has indicated that a more lenient "fair ground for litigation" standard should be substituted for the prerequisite of "a substantial likelihood that the moving party will prevail on the merits." Resolution Trust Corp. v. Cruce, 972 F.2d 1195, 1199 (10th Cir.1992).
The primary function of a preliminary injunction "is to preserve the status quo pending a final determination of the rights of the parties." Lundgrin v. Claytor, 619 F.2d 61, 63 (10th Cir. 1980). Given the more lenient standard likely applied by the Tenth Circuit due to the time constraints of plaintiff's motion for an injunction pending appeal, and the brevity of that Court's order, this court declines to infer that the Tenth Circuit's ruling on that motion constitutes a substantive ruling on the sufficiency of plaintiff's complaint. The Tenth Circuit's ruling on the injunction pending appeal was very brief (one page), and did not set forth the standard applied by the court or the grounds for its decision. Bauchman v. West High School, et al., No. 95-4084 (10th Cir. June 6, 1995). Contrary to plaintiff's assertions, courts have held that a motion to dismiss may be properly granted despite the prior issuance of a preliminary injunction. See Venezia v. Robinson, 16 F.3d 209, 211 (7th Cir. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 71, 130 L.Ed.2d 26 (1994); Cypress Barn, Inc. v. Western Elec. Co., 812 F.2d 1363, 1364 (11th Cir.1987).
Plaintiff has also attached some significance to a statement by this court at the June 2, 1995, hearing given in response to plaintiff's counsel's repeated reference to allegations of fact. This court declined counsel's offer to put on witnesses at that time and determined to decide the motion for an emergency temporary restraining order on the basis of the moving verified papers, and stated: "I think you will have your day in court on that subject." Since a motion to dismiss was not before the court at that time, the statement should not be construed to be a preliminary ruling on the motions now before the court.
[13] While plaintiff generally refers in her motion papers to Torgerson's purported intent to indoctrinate and proselytize through the selection of the choir's musical curriculum, this court's careful review of the pleadings in the complaint and in the verified supplemental pleading reveals no factual allegations concerning such intent. The pleadings allege that "Torgerson has repeatedly required plaintiff, as a student in his class, to perform Christian devotional music as part of regular, graded, required activities of the Choir Class at West High," Compl. at ¶ 17, that "Torgerson has selected explicitly Christian devotional songs for performance," Id. at ¶ 19, that "Torgerson sought to compel plaintiff to perform in public the explicitly Christian devotional music he had selected," Id. at ¶ 21, that "Torgerson selected explicitly Christian religious sites for performance," Id. at ¶ 24, and other similar allegations. At no point in the pleadings does plaintiff allege that Torgerson selected music or intended to select such music for the purpose of religious indoctrination. The court's analysis of a motion to dismiss under Fed.R.Civ.P. 12(b)(6) looks only to the factual allegations in the pleadings. Therefore, this court makes no determination as to Torgerson's state of mind, but rather limits its analysis to whether plaintiff's allegations concerning the substance of the choir's repertoire, including Christian devotional songs, state a claim of constitutional violation.
[14] Plaintiff's complaint makes numerous allegations apparently not relevant to her constitutional claims. As to Defendant Torgerson, plaintiff alleges that he engaged in harassment and intentional engenderment of hostility against plaintiff. In this regard, plaintiff alleges that Torgerson acted in such a manner as to compel the conclusion that he intended to subject plaintiff to public ridicule and vilification. For example, Torgerson is alleged to have "directed the Choir Class's attention to the fact that plaintiff is a Jew in such a way as to emphasize that her beliefs deviated from those of the Christian majority's." Compl. at ¶ 36. Based on this allegation, plaintiff states conclusorily that "Torgerson intended to promote hostility toward and ridicule of plaintiff by her fellow students as punishment for her assertion of her constitutional rights or in an attempt to pressure her to abandon those rights." Id. at ¶ 37. Such behavior toward a student by a teacher, if shown to be true, certainly should not be condoned. However, this court cannot ascertain and the plaintiff has failed to demonstrate how these allegations are relevant to the substance of plaintiff's constitutional claims. It appears instead to this court that these disputed allegations might support an action based in state tort law, which is not a subject of plaintiff's complaint.

In her verified supplemental pleading, plaintiff sets forth numerous conclusory allegations with regard to Torgerson, Boston, and the other defendants concerning their knowledge of and acquiescence in the singing of "Friends" at graduation. These allegations do not appear to the court to relate to the substance of plaintiff's constitutional claims. These allegations might give rise to a state law tort claim, and constitute the basis for a claim for damages by plaintiff in her petition for adjudication in civil contempt before the Tenth Circuit which proceedings are ongoing.
[15] Bauchman v. West High School, et al., No. 95-4084 (10th Cir. Aug. 18, 1995).
[16] Plaintiff cites several cases to demonstrate that "[c]ourts have routinely found religious songs performed or ordered by state officials to be in violation of the Establishment Clause." Pl.'s Resp.Mem. at 11. None of these cases is on point, however, and the court is not persuaded that the reasoning of these cases compels a determination that the allegations in this case rise to the level of a constitutional violation. See Jager v. Douglas County Sch. Dist., 862 F.2d 824 (11th Cir.1989) (discussing school prayer, rather than a song), cert. denied, 490 U.S. 1090, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989); Sease v. Sch. Dist., 811 F.Supp. 183 (E.D.Pa.1993) (finding that school support for a gospel choir which prayed, raised money through offerings, and sang gospel music in the school violated the Equal Access Act); Grutzmacher v. Public Bldg. Comm., 700 F.Supp. 1497, 1504 (N.D.Ill.1988) (strictly religious music surrounding a government-sponsored Christmas display violated the Establishment Clause); Doe v. Aldine Indep. Sch. Dist., 563 F.Supp. 883 (S.D.Tex.1982) (holding that a prayer required either to be recited or sung by all students was unconstitutional).
[17] The word "A'Cappella" means "in the chapel," and it is common knowledge that choral music is often associated with religion. However, these characteristics do not make all religious choral music automatically unconstitutional as excessive entanglements or primarily religious.
[18] Initially as part of her motion for a temporary restraining order or preliminary injunction, plaintiff proposes that religious choral music of a particular quality might be acceptable under the First Amendment, because such music has significance in culture and tradition. Conversely, plaintiff asserts that religious choral music of a low quality would not be acceptable under the First Amendment because its lack of quality demonstrates that its only purpose is religion. While the court questions the accuracy of this assertion, it must be rejected as a rule of First Amendment law. It would be impracticable for the courts to determine the constitutionality of songs and grade them as acceptable or unacceptable because of high or low musical quality notwithstanding otherwise allegedly objectionable content.
[19] In substance, plaintiff does allege that the selection of explicitly religious music for the curriculum had a primary effect on her to advance or promote religion. However, the subjective effect of the curriculum on plaintiff is insufficient by itself to state a claim for a constitutional violation. In this regard, the Supreme Court has stated that "every state action implicating religion is [not] invalid if one or a few citizens find it offensive. People may take offense at all manner of religious as well as nonreligious messages, but offense alone does not in every case show a violation. We know too that sometimes to endure social isolation or even anger may be the price of conscience or nonconformity." Lee v. Weisman, 505 U.S. at 598-99, 112 S.Ct. at 2661.
[20] In her response to defendants' motions to dismiss, plaintiff asserts that the cumulative allegations, even though not specifically pleaded, compel the conclusion that Torgerson acted with an intent to convey religion. In this regard, plaintiff points to a "vast preponderance" of religious music in the repertoire, Torgerson's defiant attitude in the face of plaintiff's objections, and the alleged "covert tour" planned to replace the normal Spring Tour. This court disagrees and considers that the totality of the allegations do not clearly support a claim that Torgerson intended to proselytize religion and do not rise to the level of a constitutional violation. See supra note 13.
[21] Plaintiff argues that the holding in Lee v. Weisman precludes this court's finding that the excusal option offered to plaintiff mandates against finding a free exercise violation. In Lee, the Supreme Court held that "[a] school rule that excuses attendance [at the graduation where prayer was to be offered] is beside the point. Attendance may not be required by official decree, yet it is apparent that a student is not free to absent herself from the graduation exercise in any real sense." 505 U.S. at 595, 112 S.Ct. at 2659.

Lee involved a challenge to graduation prayer under the Establishment Clause. It is logical that a graduation prayer that violates the Establishment Clause  due to its inherently religious nature and the creation of excessive entanglement of the state and religion  would not be rendered valid under that Clause simply by excusing offended students. This is true because the Establishment Clause violation persists even if no students' religion is burdened. The analysis of a Free Exercise claim is different. Since the focus is not on the activity itself, but is rather on the subjective effect on the student, voluntary avoidance by the student of the potential problem is a satisfactory resolution.
[22] Indeed, the Supreme Court has held that for a school to tailor its curriculum to satisfy the principles or prohibitions of any religion would violate the Establishment Clause. Epperson v. Arkansas, 393 U.S. 97, 106, 89 S.Ct. 266, 271-72, 21 L.Ed.2d 228 (1968).
[23] The Utah Supreme Court has held, with respect to the just compensation provisions of Article I § 22 of the state constitution relating to the taking of private property, that a private cause of action does exist. Colman v. Utah State Land Board, 795 P.2d 622 (Utah 1990). However, this holding was based on the self-executing, mandatory, and obligatory nature of the particular provision at issue. Id. at 635.
[24] The court also rules that plaintiff's claims against all defendants under the Utah Constitution are barred by the Utah Governmental Immunity Act, Utah Code Ann. § 63-30-3(1), which states in relevant part:

Except as may be otherwise provided in this chapter, all governmental entities are immune from suit for any injury which results from the exercise of a governmental function ...
The Act does not provide for waiver of immunity for claims based on the Establishment Clause, Free Exercise Clause, Free Speech Clause, or Nonsectarian Schools Clause, which are asserted against political subdivisions of the state. A "political subdivision" is defined to include school districts, and other governmental subdivisions or public corporations. Utah Code Ann. § 63-302(7). Consequently, Salt Lake City School District and West High School are immune from plaintiff's claims under Utah law.
As for the governmental employees named as individual defendants in this matter, the Governmental Immunity Act appears not to waive immunity relative to actions which involve alleged negligent violation of civil rights. Specifically, the statute states:
Immunity is waived for a negligent act or omission of an employee committed within the scope of their employment except if the injury arises out of ... a violation of civil rights.
Utah Code Ann. § 63-30-10(2) (emphasis added). In actions arising from other allegations, such as intentional acts, an employee acting within the scope of his or her duty or employment may be held personally liable only if it is established that the employee acted with "fraud or malice." Utah Code Ann. § 63-30-4(4). Plaintiff's complaint does not allege specific facts to indicate fraud or malice on behalf of any defendant, except perhaps Torgerson. In any event, none of the defendants including Torgerson may be sued directly under the state constitution for the reasons stated in the main text.