[No. G022813. Fourth Dist., Div. Three. Feb. 28, 2001.]

JUSTIN VAN SCHOICK, a Minor, etc., Plaintiff and Appellant, v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT et al., Defendants and Respondents.

**COUNSEL**

Law Offices of John A Mendoza, John A. Mendoza and Brad W. Dacus for Plaintiff and Appellant.

Walsh & Declues, J. Michael Declues and Gregory A. Wille for Defendants and Respondents.

## OPINION

**CROSBY, Acting P. J.**—Plaintiff Justin Van Schoick appeals an adverse summary judgment on his claim under the Federal Equal Access Act (FEAA or the Act) (20 U.S.C. § 4071). He contends Mission Viejo High School violated his rights under the Act by refusing to grant a student club of which he was president, the Fellowship of Christian Athletes (FCA), rights enjoyed by all other clubs permitted to meet on campus.

In particular, plaintiff challenges the trial court's conclusion that two other student clubs—the Key Club and the Girls League—were "curriculum related" primarily because participation in them satisfied a graduation requirement that all students perform eight hours of community service. Because it found those clubs were curriculum related, the court reasoned the provisions of the FEAA were not triggered and the school could, therefore, lawfully exclude his club from campus. We reverse because the court went beyond its role on summary judgment of searching for triable issues of fact when it resolved the factual disputes concerning the Key Club and Girls League.

I

Mission Viejo High School is a secondary educational facility within the Saddleback Valley Unified School District (the District), both of which receive federal monies. During the spring semester of the 1995-1996 academic year, Van Schoick received word from his football coach, William Smith, of an organizational meeting for the creation of a local chapter of the FCA, to be held at the home of another teacher, Douglas Burt. In addition to plaintiff, Smith, and Burt, an adult FCA organizer and nine other students attended the meeting, as did Burt's wife.

The attendees met for about 90 minutes, during which they discussed the FCA's purpose and aims. Subsequently, these and other students met regularly—initially at a nearby thrift store on Monday nights—and were usually joined by Burt and Smith. An FCA organizer also attended sometimes. Group officers were chosen, and plaintiff was elected president. At the meetings participants discussed the significance of various biblical passages. This Bible study was planned by the elected officers, together with Smith and Burt. In time, the students also began meeting informally at school

during noninstructional times; these meetings were student initiated and were attended solely by students.

Eventually, the group resolved to seek formal club status at the high school.[1] Toward that end, and with the assistance of Smith and Burt, the students drafted a constitution, and in May 1996, applied for recognition as an officially sanctioned club, one with the avowed aim of having "a Christian presence on campus, [and influencing] others into the Christian faith." The club's constitution declared, among other things, that succeeding officers would be appointed by the present year's four officers, "in conference with the faculty advisors," Smith and Burt. The FCA's application was denied. In rejecting the application, the principal, Duffy Clark, declared, in part, that "[t]he district has been advised that sponsorship of a student religious club would be contrary to both the United States and California Constitutions."

At that time the school district had in place a policy concerning student clubs it had adopted in the early 1990's in the wake of the United States Supreme Court's opinion in *Westside Community Bd. of Ed. v. Mergens* (1990) 496 U.S. 226 [110 S.Ct. 2356, 110 L.Ed.2d 191], the seminal interpretation of the FEAA. Pursuant to that policy, each campus was to be a "closed forum," which meant, among other things, the only student clubs that could be allowed on campus would be "curriculum related." That curriculum relatedness requirement could be met easily by existing clubs that, for instance, related directly to the subject matter of a course, such as a French or Spanish club, or to the body of courses as a whole, such as clubs promoting academic excellence and so on.[2] How to categorize existing clubs that had a more attenuated connection with the curriculum, i.e., the Key Club and the Girls League, so-called "service clubs," was more problematic.

This was the solution adopted by the Saddleback Valley Unified School District's Board of Trustees (the Board): Approved at the Board's May 11, 1993 meeting, Board Policy No. 6142.4 declared that the subject of community service was to be a component of the social studies curriculum at each high school grade level.[3] In addition, it established a new requirement that all students either perform eight hours of community service or write a

---

[1]Recognition as an official campus club, among other things, conferred certain limited rights—for example, the right to use rooms in which to conduct meetings, blackboards, and the public address system. It would also give the group greater visibility on campus.

[2]*Mergens* actually promulgated four categories of clubs that would be recognized as curriculum related, about which more will be said anon.

[3]The Board declared, "Information related to community service shall be included in the curriculum through the social science courses at the high school level. Coursework in

relatively lengthy research essay on community service in order to graduate.[4] Then, perhaps intentionally to salvage certain service clubs whose curriculum relatedness might previously have been questionable, the Board decreed that the community service graduation requirement could be satisfied by eight hours of participation in a qualified community service organization, which included service clubs such as the Key Club and the Girls League.

Thus, with all of the favored clubs arguably in the curriculum-related category, defendants were able to maintain that Mission Viejo High School was a closed forum to which the provisions of the FEAA therefore did not apply. Accordingly, the FCA had no right of access and was denied recognition as an official campus club.

Dissatisfied with the denial of the club's application, plaintiff instituted this action, alleging, among other things, that defendants violated his rights under the FEAA by denying his application. That is, plaintiff alleged that the high school permitted other noncurriculum-related student clubs, the Key Club and the Girls League, to meet on campus and use certain campus facilities, thereby making the high school a "limited open forum" and triggering the protections of the Act. Plaintiff also averred his proposed club was composed of "students who meet and fellowship [sic], share their experiences as youths, sing songs, study the Bible, and who perform various charitable acts within the community to help persons in need of financial assistance, and other needs." The FCA sought official club status in order to hold meetings on campus, meetings which "were to be student initiated, voluntary, held during non-instructional time, not sponsored by the school, government or its agents or employees; and would not in any way interfere with the orderly conduct of educational activities within the school. Further, such meetings were not to be directed, controlled, conducted, or regularly attended by nonschool persons."[5]

Defendants subsequently sought summary judgment, arguing that, among other things, the provisions of the FEAA were inapplicable because Mission Viejo High School was a "closed forum." The school had closed forum

community service shall acquaint the students with the history and importance of volunteer service and with various community needs, including needs within the school itself."

[4]In so doing, the Board explained its rationale this way: "The Governing Board desires that all students develop a sense of social responsibility. The Board encourages opportunities for students to perform voluntary duties in cooperation with nonprofit community agencies. The Board believes that community service can help students gain self-esteem, reinforce skills, discover career options and learn the value of volunteer work. Community service motivates students to learn by relating the curriculum to the needs of the community at large."

[5]Plaintiff's complaint also posited other claims, none of which are at issue in this appeal.

status, defendants argued, because all student clubs on campus, including Key Club and Girls League, were curriculum related, the condition precedent to closed-forum status under the Act. Defendants noted that the District had made the subject of community service a component of the social studies curriculum at each high school grade level. And the Key Club and Girls League were curriculum related because each satisfied the District's community service graduation requirement (ignoring plaintiff's claim that the FCA "perform[s] various charitable acts within the community to help persons in need of financial assistance, and other needs"). In any event, defendants' argument continued, even if Mission Viejo High were a limited open forum and the Act applied, the FCA still could be denied access, both because the group was not student initiated—which defendants asserted was required by the Act—and allowing it access to school facilities would violate the establishment clauses of the state and federal Constitutions.

The court granted defendants' motion. It concluded the FCA was not entitled to access under the Act because of the provision in the club's constitution giving Burt and Smith some authority over the selection of each succeeding year's officers. Likewise, because of those two teachers' involvement in the club, granting it access to campus would amount to impermissible state sponsorship of religion. Moreover, the court concluded that, because participation in Key Club or Girls League satisfied Mission Viejo High's community service graduation requirement, those clubs were curriculum related and the high school maintained a closed forum to which plaintiff had no right of access under the Act.[6]

## II

The FEAA provides in pertinent part that "[i]t shall be unlawful for any public secondary school which receives Federal financial assistance and which has a limited open forum to deny equal access or a fair opportunity to, or discriminate against, any students who wish to conduct a meeting within that limited open forum on the basis of the religious, political, philosophical, or other content of the speech at such meetings." (20 U.S.C. § 4071(a).) The Act's protections are self-limiting and apply only with respect to a school whose campus is a limited open forum, which is created "whenever such school grants an offering to or opportunity for one or more noncurriculum related student groups to meet on school premises during non-instructional time." (20 U.S.C. § 4071(b).) ■ Here, in concluding that Mission

---

[6]Although plaintiff also sought summary judgment on his FEAA claim, the court denied that motion and plaintiff does not challenge that holding in this appeal, challenging only the court's grant of summary judgment to the defendants.

Viejo High School had not created a limited open forum, the trial court rejected plaintiff's assertion that Key Club and Girls League were noncurriculum related and concluded instead the clubs were curriculum related because participation in them satisfied the community service graduation requirement.

Although the Act defines several key words and phrases, "noncurriculum related" is not among them. Relying primarily upon tried-and-true rules of statutory construction, however, the United States Supreme Court fleshed out the phrase "noncurriculum related" in *Westside Community Bd. of Ed. v. Mergens, supra,* 496 U.S. 226. There, a Bible study group whose application for club recognition had been denied by the students' high school sought to invoke the protections of the FEAA by establishing the school was a limited open forum because it recognized and granted campus access to numerous noncurriculum-related clubs, including the service clubs Interact (a junior version of the Rotary Club) and Zonta (the female equivalent of Interact). (*Id.* at pp. 243-244 [110 S.Ct. at pp. 2368-2369].) Attempting to glean legislative intent from the language and logic of the Act, the court noted that "[t]he Act's definition of the sort of 'meeting[s]' that must be accommodated under the statute, § 4071(a), sheds some light on this question. 'The term "meeting" includes those activities of students groups which are . . . not directly related to the school curriculum.' § 4072(3) . . . . Congress' use of the phrase 'directly related' implies that student groups directly related to the subject matter of courses offered by the school do not fall within the 'noncurriculum related' category and would therefore be considered 'curriculum related.' " (*Id.* at pp. 237-238 [110 S.Ct. at p. 2365], italics omitted.)

The court continued, "The logic of the Act also supports [the] view . . . that a curriculum-related student group is one that has more than just a tangential or attenuated relationship to courses offered by the school." (*Westside Community Bd. of Ed. v. Mergens, supra,* 496 U.S. at p. 238 [110 S.Ct. at p. 2365].) After noting the Act was passed in response to several then recent cases denying religious groups access to high school facilities on establishment clause grounds,[7] the court added the following: "[W]e think that the term 'noncurriculum related student group' is best interpreted broadly to mean any student group that does not directly relate to the body of

[7]This court's erroneous decision in *Perumal v. Saddleback Valley Unified School Dist.* (1988) 198 Cal.App.3d 64 [243 Cal.Rptr. 545] is a fine example. To the extent it has any vitality left, *Perumal* is overruled. (See 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, §§ 976-977, pp. 1025-1029.) Contrary to the implication of the majority opinion in that case, the free exercise clause of the First Amendment is every bit as important as the establishment clause. While the government may not promote religion, it may not discriminate against it either.

courses offered by the school. In our view, a student group directly relates to a school's curriculum [1] if the subject matter of the group is actually taught, or will soon be taught, in a regularly offered course; [2] if the subject matter of the group concerns the body of courses as a whole; [3] if participation in the group is required for a particular course; or [4] if participation in the group results in academic credit. We think this limited definition of groups that directly relate to the curriculum is a commonsense interpretation of the Act that is consistent with Congress' intent to provide a low threshold for triggering the Act's requirements." (*Id.* at pp. 239-240 [110 S.Ct. at p. 2366], italics omitted.)

Turning its attention to the specific clubs at issue in *Mergens*—which included clubs as disparate as the Future Business Leaders of America and the Subsurfers, the Chess Club, and the National Honor Society—the court rejected the assertion "that all of these student activities are curriculum related because they further the goals of particular aspects of the school's curriculum." (*Westside Community Bd. of Ed. v. Mergens, supra*, 496 U.S. at pp. 243-244 [110 S.Ct. at p. 2368].) That is, simply because particular clubs might advance the " 'overall goal of developing effective citizens . . .' . . . 'enabl[e] students to develop life-long recreational interests[,]' . . . '. . . enhance[] students' ability to engage in critical thought processes,' " and the like, did not make them sufficiently curriculum related to avoid offending the Act. (*Id.* at p. 244 [110 S.Ct. at p. 2368].) Thus, "[t]o define 'curriculum related' in a way that results in almost no schools having a limited open fora, or in a way that permits schools to evade the Act by strategically describing existing student groups, would render the Act merely hortatory." (*Ibid.*) The court also declared that, in making a curriculum-relatedness determination, courts should look "to a school's actual practice rather than its stated policy." (*Id.* at p. 246 [110 S.Ct. at p. 2369].)

Perhaps even more factually on point is *Pope by Pope v. East Brunswick Bd. of Educ.* (3d Cir. 1993) 12 F.3d 1244, 1247, in which, on a motion for summary judgment, a student Bible group sought access pursuant to the Act by establishing that several school-recognized student clubs, including the Key Club, were noncurriculum related. At the outset the court acknowledged that under *Mergens* the "Act should be construed broadly in order to effectuate the congressional purpose" of prohibiting discrimination against student religious groups. (*Id.* at p. 1248.) As in *Mergens*, it went on to say, "To that end, the existence of a limited open forum, and concomitantly the applicability of the Act itself, 'is triggered by what a school does, not by what it says.' " (*Ibid.*) With respect to the Key Club, the defendant adduced evidence to the effect that the "bulk of the Key Club's activities involve a

variety of student-initiated fund-raising activities, such as volleyball marathons, bowl-a-thons, game nights, and book, food and toy drives. The proceeds from these activities are donated to local charities." (*Id.* at p. 1252.)

The defendant argued that the Key Club's subject matter was directly related to the school's "History and Humanities classes, which teach a unit on homelessness, hunger and poverty." (*Pope by Pope v. East Brunswick Bd. of Educ., supra,* 12 F.3d at p. 1252.) Indeed, the history/humanities teacher testified his classes "participate[d] in and coordinate[d] the Key Club's food and toy drives." (*Ibid.*) Rejecting the defendant's assertion that this established curricular relatedness, the court declared that "the *Mergens* Court did not indicate that participation in one or more of the group's activities would be sufficient to make the group curriculum related . . . ." (*Ibid.*, italics omitted.) Were that the case, "schools could then evade the Act by the simple expedient of requiring some or all students to participate in a single activity or meeting of each group with which the school's administrators wish to create a curriculum relationship. Such a result would not be consistent with the low threshold for triggering the Act and would indeed render it 'merely hortatory.'" (*Ibid.*) The court concluded the defendant failed to establish the subject matter of the Key Club directly related to that of any course.[8]

In the present case, defendants argue, and the trial court held, that the Key Club and the Girls League were curriculum related because eight hours of participation in them satisfied Mission Viejo High's community service graduation requirement. The court specifically found that satisfaction of this graduation requirement established curriculum relatedness, presumably under the fourth prong of the test set forth in *Mergens* (i.e., curriculum relatedness established where participation in a club results in "academic credit"). We seriously doubt that the community service graduation requirement, without more, is sufficient to establish curriculum relatedness. As *Mergens* suggests, and as *Pope* squarely holds, community service clubs are, at best, only marginally related to the usual high school curriculum. That being the case, we fail to see how making participation in such clubs satisfy a graduation requirement somehow transforms those clubs into scholastic endeavors. Moreover, allowing Mission Viejo High to remain a closed forum merely by making participation in such marginal groups a graduation prerequisite would essentially be permitting the high school to "evade the Act by the simple expedient of requiring some or all students to participate in a single activity or meeting of each group with which the school's administrators wish to create a curriculum relationship," an eventuality condemned

---

[8]In so doing, the court declared, "The burden of showing that a group is directly related to the curriculum rests on the school district." (*Pope by Pope v. East Brunswick Bd. of Educ., supra,* 12 F.3d at p. 1252.)

by the *Pope* court. *(Pope by Pope v. East Brunswick Bd. of Educ., supra,* 12 F.3d at p. 1252.)

The facts differ here, however, in one arguably significant respect from those in *Pope*. The present defendants introduced some evidence that, in the early 1990's, the curriculum at Mission Viejo High was changed to include at least some units on the subject of community service. For several reasons, however, we believe that evidence was insufficient to establish that no triable issue of material fact existed as to the curriculum relatedness of the two service clubs here at issue (or that of FCA itself under the school's community service criteria).[9] As we have said, both *Mergens* and *Pope* declare that in making curriculum-relatedness determinations courts must look not only at what schools say, but also at what they do. *(Westside Community Bd of Ed. v. Mergens, supra,* 496 U.S. at p. 246 [110 S.Ct. at pp. 2369-2370]; *Pope by Pope v. East Brunswick Bd. of Educ., supra,* 12 F.3d at p. 1252.)

The problem is that defendants only presented evidence concerning what they said, not what they did. That is, on the issue of whether Mission Viejo High's curriculum was changed to include a component on community service, defendants only adduced evidence (1) of a Board of Trustee policy to that effect and (2) of an instructor's curriculum guide concerning community service. Defendants presented absolutely no evidence as to whether, or to what extent, teachers actually taught the subject of community service in the classroom. Indeed, the closest defendants came to presenting such evidence was the deposition testimony of Mission Viejo High principal Duffy Clark, and it was anything but helpful.

Clark was asked a series of questions about the curriculum relatedness of Key Club, during which the following colloquy occurred: plaintiff's counsel asked, is the "subject matter of that group [Key Club] actually taught in any course? [¶] A The subject matter of the Key Club? [¶] Q Right. [¶] A I don't believe so. [¶] Q Is it something that's soon going to be taught in any regularly offered course? [¶] A I don't know. [¶] Q As far as you know, it's not, is it? [¶] A As far as I know." As a result, we conclude a triable issue of material fact concerning the curriculum relatedness of Key Club and Girls League remains to be resolved.[10]

---

[9]FCA's constitution provides in part that a purpose of the club is "to demonstrate concern for our school and community through participation in community service projects that may also qualify for student community service credit."

[10]A question apparently not broached by plaintiff is whether a club devoted in part to athletics, as plaintiff's club perhaps is, might not qualify as related to the school's physical

## III

Defendants' remaining assertions need not detain us long. ■ First, defendants argue even if Mission Viejo High is deemed to be a limited open forum, the FCA is not entitled to protection under the FEAA because the group was not student initiated and because of the continued involvement of Burt and Smith. We disagree. A similar challenge was made and rejected by the court in *Pope*. There, the court noted that the only provision in the FEAA dealing with student initiation is 20 United States Code section 4071(c)(1), which merely requires that the on-campus *meetings* of student groups invoking the Act must be student initiated. The court then declared, "Congress must be presumed to know the meaning of the words and phrases it uses in drafting statutes. When it refers to student initiation in one section of the Act but omits it in another, the statute should normally be construed to give effect to the distinction Congress makes thereby." (*Pope by Pope v. East Brunswick Bd. of Educ., supra,* 12 F.3d at p. 1249.) While the evidence here suggests the initial and early off-campus meetings of the FCA were initiated by nonstudents, its informal, on-campus meetings have been, and presumably will continue to be, initiated only by students.

■ Second, defendants argue granting official school recognition to FCA and permitting its access to campus facilities would, especially given the involvement of Burt and Smith in the group's affairs, result in a violation of the establishment clause and its state constitutional analog. Again we beg to differ. Merely granting the FCA the same privileges enjoyed by all other campus clubs offends neither the United States Constitution nor that of this state. (See, e.g., *Garnett v. Renton School District No. 403* (9th Cir. 1993) 987 F.2d 641.) For purposes of summary judgment, the involvement of teachers Burt and Smith in FCA's affairs does not compel the conclusion that they initiated campus meetings, much less an establishment clause decision for the District. It was undisputed at oral argument that their participation in the group occurs off-campus and only a "custodian" (a nonparticipating staff member) would be involved on campus. Although the

education curriculum. At least that, as opposed to most forms of community service presumably, takes place on campus. We recognize, of course, for that purpose FCA may bear a similar (noncurriculum) relationship to physical education as a scuba diving club might bear to a swimming class. (See *Westside Community Bd. of Ed. v. Mergens, supra,* 496 U.S. at p. 245 [110 S.Ct. at p. 2369].) The point is that community service may be found by the trier of fact to be at least as far removed from the regular curriculum. The lawyers with their cross-motions for summary judgment fell into a mistake common to those who should be focusing on trial but are too eager to avoid it. Just because someone is willing to swear to something, e.g., that the Key Club and Girls League are curriculum related in their opinion and the FCA is not, or vice versa, does not make it so. A judge or jury needs to sort this evidence out after having the opportunity to measure the eyeballs of the willing swearers.

record reveals they have attended campus meetings, they are not considered leaders, supervisors, or sponsors—only "organizers."

Moreover, as set forth in the margin, the FEAA was carefully crafted to ensure against the possibility that a religious group's access to a public high school's campus would offend the establishment clause.[11] (*Sease v. School Dist. of Philadelphia* (E.D.Pa. 1993) 811 F.Supp. 183, 189.) Full compliance by FCA with the provisions of 20 United States Code section 4071(c) is a small price to pay for the cost of admission to campus.

The judgment is reversed. Van Schoick shall have costs on appeal.

Rylaarsdam, J., and Bedsworth, J., concurred.

A petition for a rehearing was denied March 20, 2001, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied May 16, 2001. Mosk, J., was of the opinion that the petition should be granted.

---

[11]20 United States Code section 4071(c), which applies after a high school has been found to be a limited open forum, permits noncurriculum related groups to meet on campus, provided that "(1) the meeting is voluntary and student-initiated; [¶] (2) there is no sponsorship of the meeting by the school, the government, or its agents or employees; [¶] (3) employees or agents of the school or government are present at religious meetings only in a non-participatory capacity; [¶] (4) the meeting does not materially and substantially interfere with the orderly conduct of educational activities within the schools; and [¶] (5) nonschool persons may not direct, conduct, control, or regularly attend activities of student groups."